386 So.2d 318 (1980)
Shirley Mae NEFF, Appellant,
v.
James Doyle NEFF, Appellee.
No. 79-1926.
District Court of Appeal of Florida, Second District.
August 6, 1980.
William E. Vinson, Jr. of the Law Office of Denis L. Fontaine, Lakeland, for appellant.
Michael D. Martin of Martin & Martin, Lakeland, for appellee.
OTT, Judge.
The trial court dissolved the 24-year marriage of the parties, but denied wife's claim to a special equity in a multimillion dollar family business (the chain of Foxfire/Seafox Inns) that she both directly and indirectly assisted in developing. Instead, the court awarded her the husband's interest in the family home and another parcel of real property as lump sum alimony, and permanent periodic alimony of $800 per month.
*319 We have had occasion to remark in several similar cases in recent months that the landmark decisions of our supreme court in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) and Duncan v. Duncan, 379 So.2d 949 (Fla. 1980) marked the dawn of a new era for a Florida wife who has labored beside her husband in achieving material goals. It is no longer necessary for a wife to prove, upon dissolution of the marriage, that her efforts directly and specifically produced a tangible, measurable profit or gain. Canakaris confirms the fact that marriage may indeed be a partnership in the economic area and that each partner is entitled to a fair share of the fruits of their combined industry, whether performed in the office, the factory, the fields or the home.
If, as often happens, the harvest resulting from mutual efforts winds up in the hands of one partner, the equitable share of the other can be allocated by an award of lump sum alimony.
In some instances, as here, wives labor on two fronts. While tending the home, raising the children, discharging the social and civic obligations of the family and generally performing the myriad tasks sometimes (depending on one's priorities and viewpoint) termed "supportive of the breadwinner", the wife may in addition take an active part in the family business. When she does so, Duncan requires that her direct contribution to the commercial enterprise be recognized as a special equity  a proprietary interest  in that business when marital assets are being allocated upon dissolution of the marital partnership.
In the case before us, the wife devoted long and exhausting hours, often 16 to 18 per day, seven days a week for many years to help her husband develop the original Foxfire Inn in Lakeland into the hub of several successful restaurants. She raised three children and often put in a full shift at the restaurant before facing her daily domestic chores when school recessed  only to return later to the restaurant for another four to six hour night shift. Husband, whose brief is long on platitude and short on gratitude, disparages his wife's contribution to the success of the business by pointing to evidence that she was paid $125 per week, which he asserts was reasonable compensation for a bookkeeper. He fails to mention that (1) her "salary" was paid as a tax gimmick at the recommendation of their accountant, (2) it was used for "grocery money" in the family home, and (3) the lady acted in many capacities other than as bookkeeper for the business.
Husband argues that even if his wife should be deemed entitled to a special equity in the Lakeland Foxfire Inn, that would not warrant an award to her of an interest in any of the other restaurants. That argument ignores the fact that the Lakeland facility, the original and most successful endeavor, was the "golden goose" whose eggs are traceable into the later locations. Of course, such direct tracing is no longer essential to an equitable distribution of marital assets. The Canakaris-approved use of lump sum alimony to achieve that end is now possible.
Wife also attacks the award of permanent periodic alimony of $800 per month, and argues that it is grossly inadequate. She says that this award for 24 years of unstinting effort compares unfavorably with husband's clothing bills, which he testified might total as much as $15,000 a year but was such a "small item" he couldn't be more specific. We agree that the award is inadequate as matters now stand, but we cannot predict what amount of periodic alimony, if any, will be necessary after the trial court reconsiders the distribution of marital assets in the light of Canakaris and Duncan. We discern in those cases a philosophy that a partner who has helped build a substantial estate need not and should not be on the dole, no matter how generous it may be. When partnership assets of great value are given into the sole possession of one partner, who is then enjoined to provide life care to the former partner, there is a not-so-subtle implication that the latter is somehow incapable of handling her own affairs. This demeaning aspect of such an arrangement transcends even the more obviously *320 objectionable features  impermanence, lack of independence and denial of ownership.
Many rules governing marital dissolution confirm the impression that an award of periodic alimony in lieu of an actual, outright grant of interest in assets accumulated during the marriage is a thinly-disguised denial that a proprietary right exists. For example, periodic alimony terminates on death. A wife may have struggled and toiled 40 years to help her husband make a fortune, but she has nothing to call her own or leave to her heirs. And if someone else will but obligate himself to support a divorced woman, her former husband is scotfree  with all the assets she helped him accumulate.
We believe that Canakaris and Duncan provide a more equitable and a more dignified solution to situations such as the one before us. The court below has had no opportunity to consider the true equities here in the light of those cases, or to allocate the marital properties in such manner as to recognize and protect those equities. This case must be remanded for that purpose.
The judgment of the trial court is reversed insofar as it pertains to the allocation and distribution of the marital assets, lump sum alimony and periodic alimony. In doing so, the court will be able to take into consideration (1) any recent change in the status or profitability of the various restaurants, and (2) the propriety of husband's purported gifts of substantial marital assets to the children of the parties.[1] This will permit both parties to explore husband's claim that his fortunes have been on the wane ever since this action was filed, and particularly since the judgment was entered.
In all other respects the judgment is affirmed.
SCHEB, C.J., and DANAHY, J., concur.
NOTES
[1] In fairness to Mrs. Neff, it should be made clear that she has in no way begrudged any gift her husband has made of his property to the children. Her point, with which we cannot disagree, is simply that if her property is to be given to the children, she would like to do it herself, in her own way and in her own time.