405 So.2d 454 (1981)
William Joseph TOMMANEY, Appellant,
v.
Willa Brown TOMMANEY, Appellee.
No. 81-10.
District Court of Appeal of Florida, Second District.
October 16, 1981.
Rehearing Denied November 9, 1981.
W. Van Sharman, St. Petersburg, for appellant.
Joan LoBianco Walker of Walker & Azdell, St. Petersburg, for appellee.
GRIMES, Judge.
This appeal from a judgment of dissolution involves the propriety of an award to a wife of a special equity in her husband's one-half interest in the marital home.
The Tommaneys married in Bermuda in 1967. Mr. Tommaney was a senior engineer and technician in the space program while Mrs. Tommaney worked as a resident physician at a local hospital. In 1969, his job was terminated, and they returned to Maryland where he became employed. She took a two and one-half year residency at Johns Hopkins University Hospital. While they were in Maryland, he developed a problem with alcoholism, and his earnings decreased considerably.
The Tommaneys moved to Florida in 1974, and Mrs. Tommaney obtained a job at the Pinellas County Health Department. *455 She then opened a joint bank account into which she put all her earnings. She used the funds from this account to support the family. Mr. Tommaney deposited very little into this account but rather set up another account in his own name into which he put his earnings. He used this account to pay for entertainment and telephone bills.
Mr. Tommaney had long periods of unemployment during which he only tried to find a job in the narrow field of his particular interest. However, shortly before the dissolution, he obtained a good job in telephone engineering which paid about $33,000 a year. During the marriage, he earned $117,588, whereas Mrs. Tommaney earned $289,299. At the same time, he had child support obligations of $31,031 from a previous marriage, much of which was paid out of Mrs. Tommaney's earnings. In addition to her job, Mrs. Tommaney performed most of the traditional duties of a housewife. She also nursed her husband to recovery from a heart attack in 1977.
The Tommaneys used a $10,000 certificate of deposit acquired by Mrs. Tommaney out of her earnings as the down payment on the marital home in Florida. They took title to the home, which cost $55,000, as tenants by the entireties. Later, they used $7,500 of the proceeds from the sale of their jointly owned Maryland home for improvements on the house. All of the mortgage payments came out of Mrs. Tommaney's earnings. The home was recently appraised at $117,000, but it is encumbered with a mortgage balance of $40,000. Excluding their interest in the home, Mr. and Mrs. Tommaney each now have assets worth about $15,000.
The court awarded Mrs. Tommaney a special equity in her husband's interest in the home and furnishings "by virtue of her extraordinary contribution to the marriage." There was no award of alimony or attorney's fees.
Since Ball v. Ball, 335 So.2d 5 (Fla. 1976), most special equities have been grounded upon the contribution of funds from sources unconnected with the marital relationship. If this were the only basis for a special equity, we could not sustain the judgment in this case because the funds used by Mrs. Tommaney to pay for the home did not come from sources unconnected with the marital relationship. However, it is clear that special equities may still arise from circumstances other than those contemplated by Ball. Thus, in Duncan v. Duncan, 379 So.2d 949, 952 (Fla. 1980), the court said:
The term "special equity" was judicially created to avoid the harshness of the statutory rule that absolutely prohibited alimony for an adulterous wife. See Heath v. Heath, 103 Fla. 1071, 138 So. 796 (1932). In its true sense, a "special equity" is a vested interest which a spouse acquires because of contribution of funds, property, or services made over and above the performance of normal marital duties. Eakin v. Eakin, 99 So.2d 854 (Fla. 1958). See, e.g., Ball v. Ball, 335 So.2d 5 (Fla. 1976) (property acquired with inherited funds of one spouse); Merrill v. Merrill, 357 So.2d 792 (Fla. 1st DCA 1978) (one spouse entered the marriage with possession of realty and personalty); and Green v. Green, 228 So.2d 112 (Fla.3d DCA 1969) (one spouse contributed special labor toward accumulation of the other spouse's wealth). A special equity in property held as tenants by the entirety will not arise when the property is acquired from funds generated by a working spouse while the other spouse performed normal household and child-rearing responsibilities. Ball v. Ball; accord Fiedler v. Fiedler, 375 So.2d 1119 (Fla.2d DCA 1979).
Following the lead of Duncan, this court in Neff v. Neff, 386 So.2d 318 (Fla.2d DCA 1980), recognized that a wife who has taken an active part in the family business might, in the proper circumstances, be entitled to a special equity in that business when the marital assets are allocated upon the dissolution of the marital partnership. Therefore, the question before us is whether the court was justified in concluding that Mrs. Tommaney's contributions to the marriage were so extraordinary as to entitle her to a *456 special equity in the home. In view of the unusually broad discretion accorded to trial judges in dissolution cases since Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), we will sustain the special equity.
This is not simply a case in which the wife earned more than her husband. See Holbrook v. Holbrook, 383 So.2d 981 (Fla. 4th DCA 1980). Nor is it a case in which the wife contributed her earnings to the purchase of a home and the husband used his to support the family. See Hoch v. Hoch, 380 So.2d 499 (Fla.2d DCA 1980). Here, not only did Mrs. Tommaney earn the most income while performing the duties of a housewife, she also paid for the home, provided most of the support for the family, and enabled her husband to meet his child support obligations. Hence, the court could find that this is one of the exceptional cases in which a special equity may rest upon an extraordinary contribution to the marriage. While another judge might have felt that Mrs. Tommaney's contributions were not extraordinary enough, we believe there was sufficient evidence in the record to support this judge's determination.
As our supreme court said in Canakaris:
We cite with favor the following statement of the test for review of a judge's discretionary power:
Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9th Cir.1942).
382 So.2d at 1203.
AFFIRMED.
SCHEB, C.J., and BOARDMAN, J., concur.