508 So.2d 23 (1987)
Earnest BEASLEY, Appellant,
v.
Barbara BEASLEY, Appellee.
No. 4-86-0663.
District Court of Appeal of Florida, Fourth District.
February 11, 1987.
Rehearing Denied June 26, 1987.
Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Andrew L. Siegel of Andrew L. Siegel, P.A., Plantation, for appellee.
GLICKSTEIN, Judge.
This is an appeal of a final order dissolving a marriage and distributing the assets of the marriage. We affirm the trial court's distribution of the marital home but reverse the distribution of the vacant lot and remand with direction to distribute the latter to both parties as tenants in common.
The parties were married in 1962 and resided together through the final dissolution hearing. The husband was continually employed during the marriage and the wife began working after having a child, in 1963. At the time of dissolution, the husband was employed by the Broward County Appraiser's office with an annual gross salary of $19,000.00, while the wife was employed at an approximate annual gross income of $27,000.00. Each of the parties received similar health, dental, and related benefits from their respective employers.

I.
Upon the issue of distribution of the marital home, the wife testified that for 22 years of marriage she had been "supporting the house"; that she made all but approximately two payments on the marital home, that the husband never gave her any money for the house; that prior to 1983, she paid the property taxes on their home; that the husband never gave her any money for household expenses and he only paid for food three times; that he did not contribute to her car payments if she was the user of the car, that in 1982, she was having trouble meeting all the expenses because she was also paying her daughter's college tuition; that the husband paid the light bills occasionally; that she paid for improvements to the house including a garage and family room; that if she asked her husband for money she would receive verbal and physical abuse and that she paid for everything in the house with the exception of one room of furniture; that when the house was purchased she contributed the down payment of $550 by borrowing money from her credit union; that she paid *24 for the vast majority of food, for the exterminator, water, and for the telephone and that she had borrowed $2,700 to pay off a car so it would not be repossessed.
The husband testified that after the first year of marriage, the parties separated their finances and maintained separate bank accounts because neither party could agree as to how the money was to be spent; that he used his paycheck to support his household and family; that he paid his bills by cash; that he paid all of the bills for the first year of the marriage because the wife was unemployed; that the parties came to an agreement in 1982 as to who would pay the bills; that prior to 1982 the husband stated that he paid "the taxes and the water bills, the light bill and any other bill that is due"; that he had repair work done on the home; but then seemed to say that his wife paid for these repairs, and that he would give his wife money which she could use for whatever she wanted.
The trial court awarded the wife 75% interest in the marital home. In doing so, it said:
The marital home  this is not the traditional marriage as most marriages are today, where the Wife stayed home and the Husband went into the business world and brought home the funds to run the home. The Wife was a working wife throughout her 23 years of marriage. So, she had a dual capacity as both a homemaker and a breadwinner. And, that special extra contribution over and above the traditional marital role was a general equitable distribution.
I find the Wife is entitled to 75 percent of the value of the home, or interest rate [sic] and title of the home. And, the Husband is entitled to 25 percent of the splitting of the home. The Husband's interest in the home is awarded to the Wife because of her dual role.
There was precedent for the trial court's distribution of the marital home under the reasonable person test of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). See Tommaney v. Tommaney, 405 So.2d 454 (Fla. 2d DCA 1981). We cannot say that the trial court abused its discretion.

II.
With respect to the vacant lot, which was the subject of a warranty deed from the wife's parents, to the parties, bearing minimal documentary stamps, the wife testified that she paid $700 for it by borrowing from the teachers' union and taking the rest from her checking account; that the husband contributed nothing to the lot; that her father had promised her the lot and that she has paid the ad valorem taxes on it since 1974. On direct examination, she testified as follows:
MR. SIEGEL: Do you know how Earnest's name got on this deed to the lot?
THE WITNESS: Yes, I do. I had given my dad money, and he had gone with my mother to have the lot put in our names because my parents are very traditional. They feel that if you are husband and wife, then that's it. The thing belongs to you, together as a whole.
On cross-examination, the wife, a teacher, testified that her father needed $700.00 for an automobile; that the lot conveyed to the parties was worth more than four times the $700.00; and that in her mind, it was a gift because of the difference in what she provided her father and the value of the lot. All of the foregoing seems very reasonable.
The wife's candor on direct examination is admirable. She told it just as it was. Unfortunately, the final judgment does not logically flow from her testimony in that the trial court, instead of finding a gift from the wife's parents to both parties said:
I find that the vacant lot in Boca Raton was a gift to the Wife from her father, and that the husband's name was merely for convenience. The lot, therefore, is awarded 100 percent; the rights, title and interest to the Wife.
The record does not support such finding; and the husband's testimony adds nothing as he said he knew nothing about the matter. Unfortunately, this is another *25 instance of a parental gift being made in light of present domestic harmony without any apparent concern for subsequent, or unknown, disharmony. We say unfortunately only because of a hindsight view of the foregoing which the trial court may have been attempting to rectify by its judgment. The wife's sole theory for establishing a special equity is contained in paragraph 13 of her complaint in which she asserts it was a gift to her from the father. We agree that it was, in large measure, a gift, but not solely to her.
DELL, J., concurs.
STONE, J., concurs in part and dissents in part with opinion.
STONE, Judge, concurring in part and dissenting in part.
I dissent with respect to the unequal distribution of three quarters of the house to the wife. It is an abuse of discretion to award the wife a disproportionate share of jointly owned property because she served in the dual capacity of working wife and homemaker.
One spouse should not receive a larger share of the couple's mutual assets merely because he or she has "contributed" more than the other to the marriage in the form of labor, services, or income. Certainly a statistical study and analysis is not required to recognize that the contributions of spouses with respect to both income and labor are frequently unequal. If a husband had earned more and also did more than his fair share around the house, should he retain the greater portion of their mutual wealth? What standards should we use to weigh and balance the innumerable household and familial functions and responsibilities involved? Such a balance is impossible to quantify and qualify. Even if it were possible to construct a formula to consider, factor, weigh, and balance each function, the formula would also have to compute the time, place, and reason for the discrepancy in contribution. These factors are, presumably, considered by a petitioner in deciding whether to seek a divorce. One spouse should not be punished financially by depriving him of his assets for his failure to meet a standard of work ethic.
There is no finding here of extraordinary or unusual facts such as abandonment or fraudulent conduct, that would justify unequal distribution. Earnest Beasley was employed throughout the marriage and there is no contention that he diverted income into secreted assets. The husband in this case is essentially being punished for his failure to assume the traditional role of principal provider for the family during the marriage, or for not adequately assuming a greater share of household chores to compensate for the wife's higher income. The wife contends that she is entitled to the disproportionate distribution because she elected to pay most of the family expenses out of her account, rather than incur her husband's abuse if his paychecks were not converted to cash. The court was not faced here, as in Williamson v. Williamson, 367 So.2d 1016 (Fla. 1979), with one spouse at fault creating a circumstance where the other must bear the brunt of the resulting economic consequences. To the contrary, the result here is more akin to that discouraged in Williamson at 1019.
Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), permits the award to one spouse of the interest of the other in jointly owned property. The award need not be equal. Tronconi v. Tronconi, 466 So.2d 203 (Fla. 1985). But one spouse should not be awarded a greater interest in jointly owned property simply because the court considers it "equitable" due to a disproportionate contribution of labor, income or services.
It is important to note that here we are not reviewing a distribution based on need and ability to pay. Nor is this award based on any of the specific criteria listed in section 61.08, Florida Statutes. Although the statute permits the court to "consider" any factor necessary to do equity and justice between the parties, the court's discretion is not unbridled. I can discern no reason why this situation should have resulted in an unequal equitable distribution. See Noah v. Noah, 491 So.2d 1124 (Fla. 1986). It is one thing to weigh the homemaking *26 contributions of one spouse against the income production of the other in the effort to equalize their interests in property acquired during the marriage. Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA 1986). It is another to distribute marital property unequally, because of factors not itemized in the statute, and under circumstances that would not permit the award of a special equity. See Strickland v. Strickland, 494 So.2d 514 (Fla. 4th DCA 1986); Holbrook v. Holbrook, 383 So.2d 981 (Fla. 4th DCA 1980), rev. denied, 392 So.2d 1375 (Fla. 1980); Connor v. Connor, 386 So.2d 595 (Fla. 5th DCA 1980); rev. denied, 392 So.2d 1375 (Fla. 1980); Bullard v. Bullard, 380 So.2d 1090 (Fla. 3d DCA 1980). We are not here dealing with a gift or testamentary disposition.
I would therefore reverse as to all issues.
I recognize that this dissent is in conflict with Tommaney v. Tommaney, 405 So.2d 454 (Fla. 2d DCA 1981), which we should decline to follow.