501 So.2d 661 (1987)
Barbara CRAPPS, Appellant,
v.
P.C. CRAPPS, III, Appellee.
No. BI-6.
District Court of Appeal of Florida, First District.
January 13, 1987.
Rehearing Denied February 19, 1987.
John F. Roscow, III, of Scruggs & Carmichael, P.A., Gainesville, for appellant.
James S. Quincy of Clayton, Johnston, Quincey, Ireland, Felder & Gadd, Gainesville, Ernest A. Sellers of Airth, Sellers, Lewis & Decker, Live Oak, for appellee.
SMITH, Judge.
The wife appeals the distribution of marital property in the final judgment of dissolution. The trial court erred as a matter of law in finding that certain property, and income from that property, could not be considered as marital assets subject to equitable distribution. We reverse.
The parties were married in 1961 and have three children all of whom have reached majority. At the time of the marriage, the wife was a bookkeeper in a bank, and the husband, who has a forestry degree, was working for his two familyowned banks. When they were married, the husband owned 120 acres of land, an undivided one-half interest in 434 acres, an undivided one-third interest in 395 acres, and approximately 100 shares in the two banks.
Prior to the marriage, the husband's father incorporated Forest Land and Timber *662 Company with the estate planning goal of transferring assets from his estate to his ten children. By the time of the marriage, over 6,500 acres of land had been transferred to this corporation.
After the parties married, the wife stayed home and raised the children. The husband would arise at 5:30 A.M., go to the tree farm and get the workers started for the day, and return home for breakfast around 7:30 A.M., which the wife would have fixed. He would then dress and go to the bank where he would remain until 1:00 or 2:00 P.M., when the bank closed. His father would pick him up and they would go back to the tree farm until sundown. This routine was followed six days a week. On Sunday after church, the husband's father would come and pick him up and the two would drive through various parts of the property checking on trees. The husband testified that he did not discriminate between his trees and his father's trees since he considered himself to be part of a family business. The rest of the husband's brothers and sisters did not participate as much as he did, although the boys were expected to help during the summer by picking up roots, etc., in the fields. According to the wife's testimony, the husband and his father planted 1,000,000 trees a year as part of their tree farming operation.
Throughout the marriage, the husband drew a salary only from his job as a banker, none from the Forest Land and Timber Company. Nevertheless, there were days during the pecan and pine tree planting seasons that he didn't even go to the bank.
Because of a disagreement with his father and because he felt that he might not be able to continue working for his father at the bank, the husband encouraged the wife to return to college and get a teaching degree. From 1969 through 1971, the wife attended the University of Florida. She would arise at 5:00 or 5:30 A.M. and would return home late in the afternoon or early evening. The husband hired a maid three days a week to help with the household chores, cut back on his working hours, and became more involved in child-rearing activities in his wife's absence. When the wife graduated from school, she began teaching in the Suwannee County schools and she continued in that occupation until the parties separated in 1982.
During the marriage, the husband used timber sale proceeds, stock dividends, salary and bonus income to acquire bank stock and various land parcels in his name. The parties' marital home, acquired during the marriage and worth approximately $77,250, was also titled in the husband's name. The wife used her salary for clothes for herself and the family, jewelry, trips for herself and the family, and furniture for the parties' marital home.
After the petition for dissolution was filed, but before the final judgment dissolving the marriage was entered, the husband received a substantial inheritence from his aunt and uncle. Also, the husband's father liquidated the assets of the Forest Land and Timber Company. Although the evidence shows the husband participated in the tree farming activities more than the other children in his family, the land was divided equally among the ten children.
The husband earns approximately $175,000 annually, excluding income from timber sales and farm income. We will not detail his considerable wealth; suffice it to say that he is a millionaire. In her current managerial position at a car dealership, the wife earns approximately $16,000 per year.
The final judgment of dissolution groups the husband's property into six categories: (1) assets owned by the husband prior to marriage; (2) assets acquired by the husband after the filing of the petition for dissolution but before the marriage was dissolved, which include his inheritence from his aunt and uncle and his share in the family corporation which was liquidated; (3) assets acquired by the husband during the marriage by gifts, by purchase with funds given to him by his family, and from funds received from dividends and sale of timber from assets owned prior to the marriage or assets given to him by his family; (4) assets acquired by the husband *663 during the marriage with the funds from dividends and from the sale of timber from property owned by the husband; (5) assets acquired by the husband during the marriage from salary and bonuses received by the husband; and (6) the husband's retirement benefits value.
The trial court held that all of this property except that set forth in category five (assets acquired by the husband during the marriage from salary and bonuses received by the husband) was not subject to consideration by the court for equitable distribution. The court rejected the wife's contention that she should be entitled to share in the increase in value of the property owned by the husband before the marriage or given to him by his family during the marriage, and that she was entitled to any increase in value of the husband's separate property during the marriage which was attributable to the husband's efforts during the marriage. Accordingly, the court awarded the wife as a lump sum award for equitable distribution the sum of $75,000 and permanent, periodic alimony in the amount of $1200 per month.
The wife contends that the trial court erred in failing to consider the husband's entitlement to retirement benefits in fashioning an equitable distribution of property, in failing to consider assets acquired during the marriage as marital property subject to equitable distribution, and in failing to consider the increase in value of the husband's separate property which is attributable to his marital labor as subject to equitable distribution. Finally, the wife claims the trial court abused its discretion in its meager awards of alimony and that she has been shortchanged. We will address the points raised under four separate headings.

I. RETIREMENT BENEFITS
In Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), the Florida Supreme Court modified this court's decision in Diffenderfer v. Diffenderfer, 456 So.2d 1214 (Fla. 1st DCA 1984) and held that entitlement to pension or retirement benefits must be considered a marital asset for purposes of equitably distributing marital property. Although the court left intact those decisions approving the use of pension benefits in calculating permanent periodic or rehabilitative alimony, the opinion suggests that it is preferrable to deal with pension rights as a marital asset rather than a source of support obligations where the financial circumstances of the parties indicate that a permanent economic parting of the ways is feasible. For as the court noted, when permanent periodic alimony is awarded, should the spouse paying alimony die the alimony will die with him, which leads to potential unfairness.

II. ASSETS ACQUIRED BY THE HUSBAND DURING THE MARRIAGE.
In Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA 1986), after the parties were married, the husband purchased a 35-unit apartment complex, the downpayment for which came from the sale of the home which the husband owned prior to the marriage. Title to the apartments was placed in the husband's name. At the time of the dissolution, the property had appreciated considerably and the mortgage reduced. The court held that this property, as well as another piece of property acquired during the marriage in the husband's name only, constituted marital assets subject to equitable distribution. The crucial inquiry, said the court, should be whether the property was legally and beneficially acquired by both or either of the parties during the marriage. Once an asset is classified as a "marital asset," the court ruled that the parties are entitled to an equitable distribution in any increase in value caused by inflation or market conditions.
This court faced substantially the same issue in Carrison v. Carrison, 486 So.2d 1363 (Fla. 1st DCA 1986), rev. den., 494 So.2d 1149 (Fla. 1986), in which the husband challenged the trial court's award of lump sum alimony, contending that the ultimate source of funds for all assets accumulated during the marriage was his ownership interest in an investment consulting firm of which he was part owner at the time of the marriage. Accordingly, the husband argued *664 that all the assets accumulated during the marriage were non-marital and not subject to equitable distribution. In affirming the trial court's award of lump sum alimony based upon the husband's interest in the disputed assets, this court implicitly rejected the husband's contentions.
The Fifth District Court of Appeal, considering the same issue in Laman v. Laman, 490 So.2d 985 (Fla. 5th DCA 1986), ruled that a trial court errs in ignoring assets acquired during the marriage but titled in the husband's name alone in its equitable distribution of marital assets. In that case, the husband's holdings were acquired while both parties were performing their respective marital functions and hence the husband's separate property constituted marital assets subject to equitable distribution.
Here, the husband was a banker and a self-employed tree farmer. Although the land on which he grew pines belonged to him prior to his marriage or was given to him by his family, the husband devoted considerable time during the marriage to cultivating timber  time which if he were not raising timber presumably would have been devoted to other material pursuits or on domestic duties.
Accordingly, we hold the trial court erred as a matter of law in shielding from the equitable distribution plan the income from the pines and the assets purchased in the husband's name during the marriage with that income. Utilizing the same reasoning, the trial court erred in disregarding the dividends from the bank stock owned by the husband prior to the marriage or given to him by his family and the assets purchased during the marriage from the proceeds of those dividends.

III. INCREASE OR ENHANCEMENT IN VALUE OF THE HUSBAND'S SEPARATE PROPERTY DURING THE MARRIAGE.
Pertinent to this issue is this court's recent decision in Sanders v. Sanders, 492 So.2d 705 (Fla. 1st DCA 1986). In that case, the husband inherited a 378 acre farm and marital home to which improvements were added during the marriage. The trial court awarded the wife one-half of the $40,000 in marital funds originally contributed to the improvements. This court, however, found that the record indicated that during the course of the marriage $189,958 in marital funds were expended on farm improvements. Said the court:
Under the circumstances here presented, the value of the farm property at the time of inheritance by the husband is properly shielded from equitable distribution, together with any reasonable proration of the appreciated value which the husband may show is attributable to causes other than the parties' contribution of marital funds or labors. [citation omitted] But that exclusion should not extend as a matter of right to the full value of the farm homestead at the time of dissolution. To the extent that such value was created by marital funds or labor, disposition should accord with the recognized principle: "... Once an asset is classified as a marital asset, the parties are entitled to an equitable distribution in any increase in value caused by inflation or market conditions." [citation omitted]
Id. at 707, 708.
The husband relies on Rogoff v. Rogoff, 115 So.2d 456 (Fla. 3d DCA 1959), in which the court held that the husband should not share in the increased value of stock owned by the wife which had been purchased with stock of lesser value given to her by her father. However, we find Rogoff unpersuasive as it preceded the development of the theory of equitable distribution as it appears in later case law, and is distinguishable on its facts.
It should be pointed out that the wife has made no claim to the considerable inheritance the husband received from his aunt and uncle at the end of the parties' marriage. However, during the marriage, the husband received several gifts from his family, the last one being several hundred acres of pines when the father liquidated the Forest Land and Timber Company. *665 The wife does not contend that the value of this property at the time of the gift should be included in the equitable distribution plan. However, she does contend, and we agree, that to the extent that the husband's marital labor enhanced the value of this separate property and other timber land and bank stock, that this enhanced value should be included as a marital asset in the equitable distribution plan. Sanders, 492 So.2d at 707, 708. See also Sessums, Equitable Distribution and Its Effect on Property Acquired by Gift or Inheritence, 57 Fla.BJ 262 (1983), citing among other authorities, "Equitable Distribution of the Enhancement in Value During Marriage of Property Acquired Before the Marriage," by Melvin B. Frumkes and Robert Moschell for the Florida Chapter of American Academy of Matrimonial Lawyers, Fourth Annual Advanced Institute, May 1982, Tampa, Florida.

IV. TRIAL COURT'S AWARD OF LUMP SUM ALIMONY AND PERMANENT PERIODIC ALIMONY.
In explaining his awards of alimony, the trial court found insignificant the wife's contributions to her husband's career or accumulation of assets. Yet, at the same time, he commended her efforts as a parent. Of particular pertinence here is the following quote from this court's decision in Sanders, 492 So.2d at 707:
In a division of marital assets, a primary factual circumstance to be considered is each spouse's contribution to the marriage. [citation omitted] Courts may consider the role of each party in the accumulation of those assets, Brown [v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974)] supra, but the fact that one spouse played a more active role in the acquisition and enhancement of assets, because that spouse was the primary wage earner, does not defeat the claim of the spouse who contributed to the family welfare in other ways. [citation omitted]
Finally, we note that the final judgment contains findings apparently intended to justify the disproportionate distribution of assets to the wife on the grounds that the parties' marriage was stormy and the wife left the husband several times. While we acknowledge that it is within the province of the trial judge to evaluate the conduct of the parties based on the evidence presented, we find noticeably absent any comment on actions on the part of the husband which precipitated the wife's several exits from the home. More importantly, we would emphasize that the errors we have pointed out relate to what must be considered in determining equitable distribution between the parties  a matter not within the trial court's discretion  rather than where the balance should be struck between them, which is.
Upon remand, the trial court shall receive and consider such further evidence as may be directed by the court or offered by the parties to enable the court to reach an equitable distribution between the parties in accordance with this opinion and decision. See 3 Fla.Jur.2d, Appellate Review, § 411.
REVERSED and REMANDED.
SHIVERS and THOMPSON, JJ., concur.