597 So.2d 320 (1992)
Rudolph DYSON, Appellant,
v.
Karen DYSON, Appellee.
No. 90-2539.
District Court of Appeal of Florida, First District.
April 2, 1992.
*321 Leonard E. Ireland, Jr., of Clayton, Johnston, Quincey, Ireland, Felder, Gadd, Smith & Roundtree, Gainesville, for appellant.
Thomas A. Daniel, Gainesville, for appellee.
ZEHMER, Judge.
Rudolph Dyson appeals a final judgment of dissolution of marriage. He raises four issues regarding the distribution of the parties' assets and liabilities, three of which involve the application and enforcement of section 61.075, Florida Statutes (1989). We reverse and remand for further proceedings and more specific findings of fact.
On June 20, 1989, Karen Dyson filed a petition for dissolution of marriage, which requested, among other things, that the court grant her a special equity in her husband's separate property, distribute the parties' assets and liabilities, and appoint a receiver for the operation of the parties' jointly-owned corporation, Dyson Cabinets and Millworks, Inc. On July 12, 1989, the circuit court entered an order appointing Mary Ann Broomer, an employee of Dyson *322 Cabinets, as receiver of the business. The record does not contain any reports or orders concerning the receiver's actions as a receiver. This matter ultimately was tried about a year later, and on July 16, 1990, the circuit court entered a final judgment dissolving the parties' marriage and purporting to equally divide the parties' real and personal property. The final judgment recites in part that the parties "have acquired real and personal property during the marriage and the following should be equally divided between the parties:"
6. The cash surrender value of the Husband's life insurance in the amount of $6,800 and the money in the Wife's retirement program with Nationwide Insurance Company in the amount of $7,500.
7. The ten acres of land in Alachua owned by the Husband prior to the marriage shall remain his separate property free and clear of any claim by the Wife, except the Court finds that the Wife is entitled to a special equity in the property to the extent of $9,500.00 which sum represents one half of the marital funds used to pay payments on the property.
8. The equity in the commercial building located in the Hugh Edwards Industrial Park, 2923 N.E. 20th Way, Gainesville, Florida.
* * * * * *
10. The parties own 100% of the stock in Dyson Cabinet and Millwork [sic], Inc. and this business and the debts associated therewith, including the debts to Gainesville State Bank in the amount of $29,861.99, Sales tax in the amount of $6,881.11, and Internal Revenue Service taxes in the amount of $5,801.47, shall be the sole property and responsibility of the Husband subject to a credit to the Wife of $5,000.00 as and for payment for her interest in the business.
On this appeal Rudolph Dyson argues that the circuit court erred in (1) failing to equitably distribute the parties' assets and liabilities, (2) assessing Karen Dyson's special equity in the ten acres of land in Alachua County owned by him prior to the marriage at $9,500, (3) valuing Karen Dyson's pension plan for the purpose of equitable distribution as of the date of the hearing, and (4) assessing Karen Dyson's interest in Dyson Cabinets at $5,000 without sufficient evidence of such value and contrary to the evidence of the case. Before specifically discussing each point it is appropriate to review certain applicable provisions of law.
Section 61.075(1), Florida Statutes (1989), provides in pertinent part that "[i]n a proceeding for dissolution of marriage ..., the court shall set apart to each spouse that spouse's nonmarital assets and liabilities and shall distribute between the parties the marital assets and liabilities in such proportions as are equitable, after considering all relevant factors," including among several others:
* * * * * *
(f) The desirability of retaining any asset, including an interest in a business, corporation, or professional practice, intact and free from any claim or interference by the other party.
(g) The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both marital assets and nonmarital assets of the parties.
(h) Any other factors necessary to do equity and justice between the parties.
Section 61.075(4) provides:
The date for determining marital assets and liabilities and the value of such assets and the amount of such liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage, unless the trial judge determines another date is just and equitable under the circumstances.

(Emphasis added). Under this statute, the valuation date is presumed to be the earliest of the date the parties enter into a valid separation agreement, another date expressly established by a valid separation *323 agreement, or the date on which the petition for dissolution of marriage is filed. Bobb v. Bobb, 552 So.2d 334 (Fla. 4th DCA 1989). The statute also gives the trial court discretion to use another date for valuing the assets and liabilities, if the court determines that use of such other date is just and equitable under the circumstances and both the reason and the other date are stated in the final judgment. Bain v. Bain, 553 So.2d 1389 (Fla. 5th DCA 1990). In order that an appellate court may provide adequate review to assure compliance with the requirements of section 61.075(4), therefore, we conclude that unless the circuit court distributing marital assets in a final judgment of dissolution specifically identifies a valuation date of these assets that is different from the date of filing of the petition and also recites the specific circumstances and considerations that make use of this date just and equitable, we shall presume that for such valuation the circuit court used the date of filing the petition or the date the parties entered into a valid separation agreement, whichever is earlier, unless the record contains a specific written agreement executed and filed by the parties establishing a specific date of valuation. This requirement will avoid disputes by the parties, like the arguments advanced in this case, that the conduct and actions of each party after the valuation date provided in the statute reduced the value of the assets and that such reductions should be taken into consideration in valuing the distributed marital property.
It has also been recognized that "[w]hen property valuation is an integral part of the court's entire plan of distribution, confusion as to value requires reversal of the property award." Ross v. Bandi, 566 So.2d 55, 56 (Fla. 4th DCA 1990). See also Saxton v. Saxton, 454 So.2d 575 (Fla. 4th DCA 1984). In this case, the parties had not made a valid separation agreement prior to filing this action and did not file any agreement as to a valuation date; thus, the circuit court was required to make a determination pursuant to the statute if any date other than the filing date was used for valuation of marital assets. Although there was evidence that the value of some of the assets had changed between the filing date of the petition and the hearing date, and it appears that the trial court may well have used a valuation date other than the filing date, the final judgment fails to indicate which assets were valued other than as of the filing date (i.e., the hearing date), and no reasons were specified for using such other date.
Addressing Rudolph Dyson's first point, that the trial court did not equitably divide the marital properties of the parties, we are unable to determine from the face of the final judgment or upon review of the record what valuation was given to each of the distributed properties, the date of valuation used, or the evidentiary basis for the valuation used in those instances where the court stated a valuation. For this reason, we are unable to adequately perform our appellate review function in determining whether the circuit court abused its discretion in distributing the parties' assets and liabilities in the manner that it did. Therefore, we must reverse the provisions of the final judgment effecting a distribution of the parties' marital assets and liabilities and remand for further written findings of fact in accordance with this opinion. See Eisner v. Eisner, 513 So.2d 673 (Fla. 1st DCA 1987); Ashe v. Ashe, 509 So.2d 1146 (Fla. 1st DCA 1987); De Poorter v. De Poorter, 509 So.2d 1141 (Fla. 1st DCA 1987); Barrs v. Barrs, 505 So.2d 602 (Fla. 1st DCA 1987). Reconsideration of all pertinent issues relating to the distribution scheme, especially those discussed below, is necessary on remand. Eisner, 513 So.2d 673. The circuit court shall "receive and consider such further evidence as may be directed by the court or offered by the parties to enable the court to reach an equitable distribution between the parties in accordance with this opinion and decision." Crapps v. Crapps, 501 So.2d 661, 665 (Fla. 1st DCA), rev. denied, 511 So.2d 297 (Fla. 1987).
For the guidance of the circuit court and the parties on remand, we also address the remaining three points on appeal.
*324 Appellant's second point complains about the valuation of the wife's marital interest in the 10 acres of land owned by the husband before the marriage on which the parties had made mortgage payments with marital funds. The final judgment provided that Karen Dyson had a "special equity" in this property and valued it at $9,500, "which sum represents one half of the marital funds used to pay payments on the property." There is evidence in the record that Rudolph Dyson acquired title to this property approximately two years prior to the parties' marriage, that approximately $19,000 in marital funds were used to pay a portion of the mortgage on that property, and that the parties had pine trees planted on the property during the marriage that will be worth approximately $10,000 upon maturity in approximately ten to twelve years after the hearing. The trial court's disposition of this item does not comport with the applicable law in at least two respects.
First, Karen Dyson's interest in this property is not correctly described as a "special equity." A special equity is a vested property interest brought into the marriage or acquired during the marriage because of a contribution of services or funds over and above normal marital duties. Canakaris v. Canakaris, 382 So.2d 1197, 1200 (Fla. 1980); Duncan v. Duncan, 379 So.2d 949, 951-52 (Fla. 1980). Special equities are generally based upon the contribution of funds from sources unconnected with the marital relationship. See Bolton v. Bolton, 421 So.2d 697 (Fla. 2d DCA 1982); Tommaney v. Tommaney, 405 So.2d 454 (Fla. 2d DCA 1981). Karen Dyson's contribution of funds toward the payment of the mortgage does not constitute, on this record, a contribution of funds from a source unconnected with the marriage or of services over and above normal marital duties, but rather is more properly characterized as a contribution towards marital expenses. See Guarine v. Guarine, 525 So.2d 1037 (Fla. 4th DCA 1988); Hottman v. Hottman, 418 So.2d 304 (Fla. 4th DCA 1982). Her payments toward the mortgage on the property does, however, give rise to a marital interest in the property that is subject to equitable distribution.
Second, the evaluation of Karen Dyson's marital interest in the property appears to have been based on the total amount of her contributions toward the mortgage payments during the marriage. This also is error as a matter of law because the correct measure of her interest must be based on the enhanced value of the property during the marriage. In Crapps v. Crapps, 501 So.2d 661, this court recognized that where a party has separately-owned property on which marital funds or labor were expended during the marriage, the value of the property at the time that it was acquired, together with any reasonable proration of the appreciated value that the party may show is attributable to causes other than the parties' contribution of marital funds and labor, is shielded from equitable distribution as a special equity. To the extent, however, that the value of that property was enhanced by marital funds or labor, that enhanced value should be included as a marital asset in the equitable distribution plan. 501 So.2d at 664-65. These are the relevant findings, therefore, that must be made by the circuit court in valuing the amount of Karen Dyson's marital interest in this particular 10 acres brought into the marriage by Rudolph Dyson. The final judgment, however, fails to make any finding on the following factors relevant to evaluating Karen Dyson's marital interest in this property: (1) the value of Rudolph Dyson's equity in the property prior to the marriage; (2) the value of the property as of the petition filing date, unless another valuation date was specified to be more just and equitable under the circumstances; (3) the extent to which the value of the Alachua property was enhanced by causes other than the parties' contribution of marital funds and labor; and (4) the extent to which value of the Alachua property was enhanced by the use of marital funds and labor. Findings of fact on these factors are essential to a reviewing appellate court's ability to determine whether the circuit court has abused its discretion in assessing valuation and making equitable distribution of a spouse's *325 interest in property brought into the marriage by the other spouse. Crapps v. Crapps, supra.
Appellant's third point complains of the circuit court's valuation of Karen Dyson's pension plan, which the parties agree is a marital asset. The final judgment attributes a value of $7,500 to her retirement plan and equally divides that amount between the parties. However, the final judgment does not indicate what valuation date the circuit court used in making this determination, although it appears from the record that her pension plan was valued as of the hearing date rather than the filing date of the petition for dissolution. There is evidence in the record that the amount of funds in the plan on the filing date was $12,500, and that those funds were reduced to $7,500 due to legal expenses and personal expenses Karen Dyson incurred after the petition was filed because she moved out of the marital home and allowed Rudolph Dyson to remain in the home rent free. While, as Karen Dyson argues, that evidence may have prompted the trial court to use the hearing date rather than the filing date for valuation purposes, the justification for doing so was not explicated in the final judgment as required by section 61.075(4); the judgment does not indicate that the trial court made any supportable determination that it was just and equitable under the circumstances to use a date other than the filing date to value the pension plan.[1] This was also an error that must be corrected on remand.
Finally, appellant's fourth point contends that the trial court erred in determining the value of Karen Dyson's marital interest in Dyson Cabinets. This company was formed shortly after the marriage and was jointly owned, with each having a 50% interest. In making an equitable distribution of the business, the circuit court awarded Rudolph Dyson 100% interest in the business, including all liabilities incurred by that business, and awarded Ms. Dyson $5,000 as her interest. She was absolved from any liability for any of the business debts. Due to the absence of specific findings of fact as well as competent substantial evidence to support the $5,000 valuation given to Karen Dyson, we must also reverse this determination and remand for reconsideration for the following reasons.
First, the hearing transcript indicates that the circuit court apparently computed Karen Dyson's interest in the business based on testimony that Rudolph Dyson had converted contracts from Dyson Cabinets, along with other operating assets removed from the Dyson Cabinets premises, for the benefit of a business formed in his own name called Gator Cabinets and Counterworks. These incidents apparently occurred after the filing of the petition for dissolution. However, neither the final judgment nor the record establishes what date the circuit court used for valuation of the Dyson Cabinets business, whether all of the contracts that Rudolph Dyson allegedly converted were acquired prior to the petition filing date or afterwards,[2] and whether the business had any net value on the date on which the petition was filed. Furthermore, it cannot be determined from this record whether Dyson Cabinets had the ability to pay its liabilities and existing debts, including the Gainesville State Bank mortgage, the sales tax warrant, and the internal revenue taxes, all of which must be treated as business liabilities to be taken into consideration in valuing each party's interest in the jointly-owned business. Unless Dyson Cabinet Company has the ability to pay all such obligations, then Rudolph *326 Dyson's personal liability on the mortgage note must be considered a part of the marital property being distributed and credit must be given for that personal obligation. In short, this record does not contain evidentiary support for valuing Karen Dyson's interest in Dyson Cabinets at $5,000 and distributing that sum to her.
We note the fact that the circuit court appointed a receiver for Dyson Cabinet Company shortly after the dissolution petition was filed. This receiver, even though an employee of the company, became obligated to take over and account for the parties' jointly-owned business during the course of these proceedings and to operate the business in such a fashion as to account to the court for all assets, liabilities, income, and disbursements until such time as the business was distributed to the parties. Had this been timely and competently done, the circuit court would have competent evidence from the receiver upon which to make a determination of the fair market value of the business to be equitably distributed. Likewise, accountability for the disputed contracts for cabinet work should have been properly handled by the receiver, if made by Dyson Cabinets. Perhaps on remand the receiver can comply with these obligations and provide the court with the information necessary to resolve these disputed issues.
For the reasons stated above, all provisions in the final judgment effecting an equitable distribution of marital assets are reversed and the cause remanded for further proceedings in accordance with this opinion. Nothing stated herein should be construed as an expression by us concerning the ultimate valuation to be given any asset or the manner in which the marital assets and liabilities should be equitably distributed. The circuit court is free to take additional evidence as it and the parties deem appropriate during further proceedings pursuant to this decision.
REVERSED AND REMANDED.
WOLF, J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, Judge, dissenting.
The trial court found that appellant "converted" assets of the jointly-owned Dyson Cabinet Works and transferred them to his new corporation, Gator Cabinets. The trial court further found that the corporate assets of Dyson Cabinets equaled its liabilities.[3]
These findings are undisputed. Yet appellant has at no time offered to account for the assets of Dyson Cabinet Works. He does not seek to have this court remand for findings as to the value of those corporate assets. Appellant contends, however, that appellee must be required to assume her share of the liabilities of the corporation that he pilfered!
The trial court's ruling that appellant have sole ownership and assume sole responsibility for the liabilities of Dyson Cabinet Works is thus entirely appropriate. He who seeks equity must do equity.
But appellant goes further and contends that appellee should not be allowed a credit of $5,000 for her one-half interest in a corporation that, in the year prior to filing *327 of dissolution, grossed more than $400,000. On appeal to this court, appellant states, simply, that the award is "not justified."
The trial court states that the $5,000 award is the wife's one-half share of the net return from two contracts wrongfully taken from Dyson Cabinet Works. The husband does not dispute the converted contracts or the net return therefrom or the court's finding that the husband's record-keeping obscured further determinations of value. The husband has failed to show an abuse of discretion.
The trial court's determination as to the pineland and the wife's pension fund is also supported by the record, as is recited in the majority opinion. Appellant does not dispute the fact of appellee's contribution to the mortgage on the land, the planting, and the fencing. He does not dispute that it was necessary for her to use $5,000 of her pension funds for living expenses, including lodging, for the 12 months between the date of filing for dissolution and the hearing. Appellant lived in the marital home rent free for the entire separation period. He claims, however, that he is entitled to one-half of the $5,000 expended by appellee; on what legal basis we are not told.
The obvious question here is: What purpose is to be served by remand for valuations of assets and more extensive findings? No values are unclear, other than as to assets converted and controlled by the husband. No valuation date is questioned other than that of appellee's pension, and the court has indicated why it chose the date-of-hearing value sufficient for Section 61.075(4), Florida Statutes. Appellant's contention as to the pineland is that the wife's contribution has no value. He presented no evidence to that effect below, however. Appellee's evidence of value was properly accepted by the court in the absence of any countervailing or more credible evidence.
For the foregoing reasons, I dissent from the majority view and would affirm the judgment below.
NOTES
[1] At the hearing the trial judge merely stated that: "With regards to the wife's retirement plan, since I'm going to have each party pay their [sic] own attorney's fees, that's the amount left. That Mr. Dyson is entitled to one half interest in the $7500 that remains in the wife retirement plan."
[2] We are unable to determine from the record which contracts the court may have found to have been converted and whether those contracts came into being prior to or after the filing date of the petition. It appears that at least four contracts were involved, i.e., the McDevitt contract, the Burns contract, the Veterans Administration contract, and the Anglin Construction contract; however, only the McDevitt contract is included as a part of the record on appeal.
[3] The trial court states its findings on the record, in pertinent part as follows:

Mr. Dyson has taken some of the assets from Dyson Cabinets and changed that to Gator Cabinets. He has taken contracts from Dyson Cabinet and converted them to Gator Cabinet... .
... The assets of Dyson Cabinets was worth no more than what Dyson Cabinet owes. As a result, I'm going to find that Mr. Dyson shall be responsible for the Gainesville State Bank loan of $29,000, the Florida State Tax Warrant of $6088, and the amount owed to the Internal Revenue which is about $5800. And he shall assume those responsibilities, and he shall have the assets of Dyson Cabinets.
However, Dyson Cabinets transferred two valuable assets to Gator Cabinets. That was two contracts worth $12,000. It's very difficult, because of the way Mr. Dyson kept books at Gator Cabinet for me to figure out what it costs Gator Cabinet to complete those. Except I do have some evidence that approximately $2000 was spent by Gator Cabinets to complete the $12,000 contract. So out of those contracts, I figured there's a net  at least a net of $10,000. So Mr. Dyson is to pay Mrs. Dyson the amount of $5000. Which is half of the contracts that he transferred without permission, without authority, without anything that I know about to Gator Cabinets.