522 So.2d 880 (1988)
Mary Jo CARR, Appellant,
v.
George L. CARR, Appellee.
No. BN-166.
District Court of Appeal of Florida, First District.
February 16, 1988.
Rehearing Denied March 28, 1988.
*881 John L. Myrick of Myrick & Davis, Pensacola, for appellant.
M.J. Menge of Shell, Fleming, Davis & Menge, Pensacola, for appellee.
SMITH, Chief Judge.
The wife appeals a final judgment in a dissolution proceeding contending that the trial court erred (1) in failing to equitably distribute the marital assets; (2) in awarding inadequate permanent alimony, and improperly ordering an award of rehabilitative alimony; and (3) in failing to consider as marital assets the value of assets forming a part of the husband's medical practice. We find error and reverse.
The wife in 1985 filed her petition for dissolution of the parties' marriage of 20 years duration. At the time of the final judgment in April 1986 the wife was 57 and the husband 62 years of age. This was the wife's second marriage, the husband's first. They had two adopted sons, ages 18 and 19, and one natural child, a daughter, age 15.
The husband, a general surgeon, obtained his medical degree in 1952 and began his practice in 1959 in Pensacola. At the time of the marriage he had been in practice for six years, and in 1969 established a professional association for his practice of which he was the sole stockholder. In his amended financial affidavit, the husband listed as "marital assets" the following: the marital home, $135,000; an unimproved lot, $125,000; and personal property in the marital home, $25,000, all owned as tenants by the entireties; a 1979 Oldsmobile, $3,000; cash value of life insurance, $13,500; and cash on hand, $400. Also listed as marital assets were various investments, consisting of rental property, $64,000; interest in Physician's Laboratories and Physician's Laboratories of Northwest Florida, $75,000; Pensacola POB Limited I, $30,000; de LaSalle Estates Limited Partnership, $16,000. The total of these listed "marital assets" comes to $486,900. Also listed in his financial affidavit under the heading "Separate Assets of Respondent" were the following: stock in George L. Carr, M.D., P.A., $70,000; retirement plans consisting of a profit sharing plan, $270,000; pension plan, $168,000; KEOGH retirement plan, $13,068; and his IRA account, $4,732. The total value of these listed "Separate Assets of Respondent" comes to $525,800. He listed liabilities of $220,514 (plus obligations payable to his own pension or professional association totaling $74,000). These figures indicate a net worth in the neighborhood of $800,000 (assuming the $74,000 indebtedness does not reduce his net worth). In addition, the husband's income from his medical practice for the two years preceding the dissolution disclosed income from his medical practice of $125,000, and $127,000 a year, respectively. The rental property owned solely in the husband's name generated $500 per month in rent.
The wife, a high school graduate, had two years of nursing school, and had completed almost all the requirements for an associate degree from the local junior college. She had limited work experience as a medical secretary, which she performed on a periodic basis during her first marriage, and during the early years of her marriage to appellee. During the years 1982 and 1983, she served as Sunday School director for a local church, earning a total of $8,000 for the two years. In 1984, she held a part-time adjunct teaching position in the medical secretary program at the local junior college, for which she received remuneration of $2,500. At the time of the dissolution hearing, she was working part-time in another position at the junior college teaching ten hours a week at a rate of $9.00 per hour. This employment was not expected to continue beyond the current school term. The wife described her health as fragile, complaining of problems with diverticulitis, and chronic arthritis. She was also experiencing some vision problems. The wife listed no assets of her own, other than her undivided one-half interest in the marital home and in the vacant residential lot and her IRA account amounting to $4,938.
In the final judgment, the court ordered joint parental responsibility for the minor child, Caroline (primary physical residence with the wife), for whose support the husband *882 was required to pay $500 monthly, and in addition, to pay the child's health insurance and school tuition. The wife was awarded permanent periodic alimony in the amount of $1,500 per month, plus health and hospital insurance benefits, and rehabilitative alimony of $1,000 per month for a period of 24 months.
The marital assets (as determined by the trial court) were distributed as follows: The wife was awarded the undeveloped lot, valued at $125,000; her IRA amounting to $4,938; the 1979 Oldsmobile valued by the husband at $3,000; one-half of the household furniture and effects, value $12,500; and in addition, was awarded $25,000 in lump sum alimony, payable at $500 per month over a period of 50 months. The assets distributed to the wife, other than periodic alimony, amounted to $167,430, including her own IRA account. The husband received the marital home, value $135,000; one-half of the marital home furnishings and contents, $12,500; the rental property, $64,000; his interest in Physician's Laboratories and Physician's Laboratories of Northwest Florida, $75,000; his interest in Pensacola POB Limited I, $30,000; de LaSalle Estate Limited partnership, $16,000; stock in his medical practice, $70,000 (based upon husband's own financial statement); profit sharing plan, $270,000; pension plan, $168,000; KEOGH retirement plan, $13,068; IRA account, $4,732; and the cash surrender value of life insurance policies, $13,500. These assets totalled $871,800, subject to liabilities of $220,514 (not including $74,000 in obligations owed to his profit sharing and pension plans, or  in effect  to himself), leaving a net distribution to the husband of approximately $651,300, which would be reduced to approximately $626,300 after payment of the $25,000 lump sum alimony to the wife.

EQUITABLE DISTRIBUTION
The trial court did not have the benefit of the Florida Supreme Court's decision in Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986), at the time the judgment was entered. That decision makes it abundantly clear that in considering equitable distribution, the trial court shall consider as marital assets the husband's interest in all profit sharing and pension plans such as those in the present case. The trial court, here, apparently proceeding under the assumption it was required to do so by this court's opinion in Diffenderfer v. Diffenderfer, 456 So.2d 1214 (Fla. 1st DCA 1984), treated the profit sharing and pension plans as subject only to consideration as a source of payment of alimony for the wife. The final judgment recites, in part: "Respondents' pension and profit sharing plans must be retained by Respondent in order for him to meet his alimony and support obligations." When the alimony award actually made to the wife here is considered together with the division of marital assets between the parties, it appears to us that the trial court reached a result in this case which is at odds with the Supreme Court's Diffenderfer decision, and is incompatible with any reasonable view of equitable distribution under Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), and its progeny.
At the outset, we find nothing in the supreme court's Diffenderfer decision to justify a grossly disproportionate division of total marital assets based solely upon a finding that retirement or pension benefits are "needed" as a source of alimony and support obligations. It is evident that the trial court here based the "equitable distribution" of marital assets upon the assumption that the husband's profit sharing and pension plans are assets to be set aside solely for the husband's benefit, except for the fact that upon his retirement from active practice as a medical doctor, he must necessarily use income from these investments as a source of payment of alimony to the wife. We find the trial court's finding of a present "need" for use of these retirement assets as a source of alimony and support payments unsupportable, since the husband is an active medical practitioner earning, as previously indicated, in excess of $125,000 per year, not to mention his additional income from other sources. Further, there was clearly no lack of "offsetting assets," Diffenderfer, 491 So.2d at *883 268, so that the trial court could (and on remand, may) effect a more equitable division of marital assets with insignificant encroachment, or possibly even none at all, upon the husband's profit-sharing and pension plans.
It is clear, despite appellee's suggestions to the contrary in his brief, that the only "equitable division" of marital properties reflected by the final judgment rendered was directed to all assets other than the profit sharing and pension plans.[1] Thus, the wife received some $167,430 in value (including her own IRA), as compared with the husband's receipt of $185,000 in value of comparable assets, and in addition, the total of $525,800 represented by medical practice assets and his profit sharing and pension plans.[2] We conclude that under no reasonable view can it be found that the husband's obligation to pay the relatively modest sum of $1500 per month periodic alimony (plus health insurance)  given the age of the parties and duration of the marriage, their standard of living, the present and future earning ability of the husband as a medical practitioner, and the potential unfairness to the wife should the husband predecease her  offsets the husband's retention of the entire value of his medical practice and his profit sharing and pension plans. Retention of the entire amount of the profit sharing and pension plans is not "needed" by the husband in order to defray his alimony and support obligations, since he has ample present income from his own earnings to pay those obligations. Further, as disclosed by the evidence before the trial court, other non-retirement assets are available for distribution to the wife, or a division of the retirement assets could be made, which would allow the wife to draw the income from her share of these assets directly for her own support and maintenance, in which event there would be no necessity for the same to be held by the husband in order that he might obtain money in the same fashion and then pay it to the wife as periodic alimony. Significantly, the wife would not be left relatively impecunious in event of the husband's death and resulting cessation of periodic alimony, as would be the case under the distribution plan fashioned by the trial court. See, Diffenderfer v. Diffenderfer, 491 So.2d at 268, referring to the "potential unfairness" that can result should the husband predecease the wife.
Appellee urges that the awards in this case were "reasonable" by comparison to awards approved in Canakaris v. Canakaris, supra; DiPrima v. DiPrima, 435 So.2d 876 (Fla. 5th DCA 1983), pet. for rev. den., 447 So.2d 886 (Fla. 1984); and Dewberry v. Dewberry. 455 So.2d 420 (Fla. 2nd DCA 1984). We disagree. In Canakaris, the wife (age 50) received assets valued (in 1976) at $385,000, which included the $75,000 marital home in which she was living, and $500.00 per week permanent periodic alimony. In DiPrima, the wife received assets valued at $645,270 (according to wife's estimate), and $3,000 per month permanent alimony. In Dewberry, the wife received assets of $220,291, which the court found was "nearly all the liquid assets of the parties." 455 So.2d at 421. In addition, she was awarded $24,000 annually in permanent alimony. The husband was allowed to retain his stock interest in businesses and corporations which he actively assisted in operating, and which was the sole source of income for payment of the alimony award. In two of these cases, the awards to the wife far exceeded the awards in the case before us; and in Dewberry, while the property awarded to the wife exceeds the award in the case before us by a more modest amount, it is noted that her award included the marital home, alimony exceeding the award here, and there were virtually no other liquid assets to award to the wife. It is also noted that in Dewberry, the wife also retained inherited properties valued, according to the husband, at approximately $50,000. Finally, *884 just as the court in Dewberry declined to hold that equitable distribution entitles each party to an equal share, we decline to accept appellee's argument, by implication, that the reasonableness of an equitable distribution award to the wife can be reduced to a mathematical formula based on the percentage of total assets awarded to each party.

ALIMONY, AND REHABILITATIVE ALIMONY AWARD
Under the final judgment, the wife has no home, and consequently has the alternatives of either using a portion of her monthly alimony for rental or purchase of a dwelling, or of buying a home outright, in which event her income-producing assets would be substantially depleted. The wife has no history of earning, nor of being capable of earning, income even approaching that necessary to maintain herself in keeping with the standard enjoyed during the marriage; and in addition, the evidence does not support a finding that she is capable of being rehabilitated. Rehabilitative alimony "presupposes a potential for self-support that has been underdeveloped or completely lost during the marriage," and "is appropriate only where the evidence suggests the wife can be raised to a financial stature that would permit her to become self-supporting." Hobart v. Hobart, 512 So.2d 992, 993 (Fla. 1st DCA 1987). See also, Holcomb v. Holcomb, 505 So.2d 1385 (Fla. 1st DCA 1987); Hamilton v. Hamilton, 508 So.2d 760 (Fla. 1st DCA 1987); and Halberg v. Halberg, 519 So.2d 15 (Fla. 3rd DCA 1987).
We are fully cognizant of the evidence below indicating that the husband contemplates retirement, at age 65, from the rigors of his medical practice. This he is entitled to do; but not at the expense of the wife's right to adequate financial arrangements for her own living expenses, nor her right to equitable distribution. Cf., Ward v. Ward, 502 So.2d 477 (Fla. 3rd DCA 1987). We find it somewhat ironic here that provision is made by the final judgment appealed to allow the husband to retire to a life of relative ease, comfort and financial security, while at the same time the wife (at age 57, or 59 at the end of the two-year rehabilitative period, only a few years younger than the husband, and with no significant established earning ability) is relegated to the prospect of entering the working world in search of a career upon which she would have to depend, in event of her husband's death and resulting cessation of alimony, to provide the means of her support well past her ordinary retirement age. This result in this case is both unnecessary, uncalled for, and unexplained.
The award of periodic alimony of $1500 per month is inadequate on the record before us; and the award of rehabilitative alimony is in error. We have considered, but must reject, any notion that the award of rehabilitative alimony can be sustained on the premise that if the wife is unable to become "rehabilitated," she can always petition for an increase in permanent alimony, or an extension of the rehabilitative period. If an erroneous award of rehabilitative alimony is allowed to stand, before the wife would be able to obtain a modification at a later date, she would be required, improperly, to assume the burden of establishing the loss of a rehabilitative capacity presumed to exist by reason of its inclusion in the final judgment. Since the award of rehabilitative alimony was in error, on remand the court is directed to convert the alimony award into a suitable amount of permanent, periodic alimony, taking into account, however, the effect upon the wife's needs, and the husband's ability to pay, occasioned by the restructuring of the division of marital assets. We caution, however, that nothing stated in this opinion shall be construed as approving or disapproving, in advance, any particular montary awards or division of assets which might be fashioned by the trial court on remand in the light of this opinion and the requirements of Diffenderfer.

EXCLUSION OF MEDICAL PRACTICE FROM "MARITAL ASSETS"
The final judgment contains these findings: "The Court does not consider Respondent's medical practice as a marital *885 asset. He had established his practice prior to the marriage." It was error to exclude the tangible assets of the husband's medical practice (cash on hand, furniture and fixtures, accounts receivable, etc.) from marital assets. That the husband established his practice prior to the marriage is not controlling on this issue. The practice was not incorporated until 1969. No value was established for the tangible assets connected with the medical practice owned by the husband at the time of the marriage, nor was this value at the time of incorporation established. The wife testified, however, that at the time of the marriage the husband earned only about $18,000 a year, and had accumulated few assets. The trial court erred in failing to consider as marital assets the value of the tangible assets of the medical practice acquired subsequent to, and the enhancement in value of the assets during, the marriage. Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA 1987), pet. for rev. den., 511 So.2d 297 (Fla. 1987).
For the foregoing reasons, the judgment appealed is reversed, and the case is remanded for further proceedings consistent with this opinion.
REVERSED.
JOANOS, J., concurs.
BARFIELD, J., dissents and concurs with opinion.
BARFIELD, Judge, dissenting and concurring:
I must decline to support the majority's analysis of the evidence and distribution of the property. In my judgment they invade the province of the trial judge. I only concur that the retirement funds should be evaluated in light of Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla. 1986). Division of these funds by transfer of assets as suggested by my colleagues is not the only remedy available to the trial court. Use of insurance on the life of the husband, paid for by the husband, with the wife as irrevocable beneficiary is a viable alternative to asset transfer. There appears to be an appreciable amount of such insurance already existing as the majority discussed when focusing on its $13,500 cash surrender value.
The rather innocuous statement by the wife that the husband did not have much in the way of assets when they married does not lead to the conclusion that the medical practice with a tangible asset value of $70,000 must necessarily be included in the division of marital assets. There is no evidence of the tangible asset value of the practice at the time of marriage. There is no evidence that any appreciation was due to factors other than inflation. There is no dispute that the husband developed his practice for six years before the parties married. There is a complete lack of proof that there was any enhanced value as to the tangible assets comprising the value of this practice which resulted from the husband's labors during the course of the marriage. I must disagree with my colleagues that the wife should have a second opportunity to fill this void.
Other than requiring the trial judge to reevaluate the retirement status of the parties under Diffenderfer, I would not disturb the decision.
NOTES
[1] No other view of the distribution effected by the final judgment would account for the finding therein that to "balance the equities" the husband was required to pay lump sum alimony of $25,000.00.
[2] Liabilities of $220,514 were assumed entirely by the husband, leaving a net award to him of some $651,300.