547 So.2d 185 (1989)
Diane M. VILLAVERDE, Appellant,
v.
Richard J. VILLAVERDE, Appellee.
Nos. 88-2003, 88-1942 and 87-2632.
District Court of Appeal of Florida, Third District.
June 13, 1989.
Rehearing Denied August 23, 1989.
*186 Pardo & Pardo, Daniels & Hicks and Bambi G. Blum, Miami, for appellant.
Taylor, Brion, Buker & Greene and Arnaldo Velez, Miami, for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.
BASKIN, Judge.
Diane and Richard Villaverde were married for eleven years. At the time of their marriage, the husband had just started his own medical practice. During the marriage, the wife raised the couple's two minor children and worked in the husband's office, contributing significantly to its successful operation. Eventually the wife entered law school; during her second year, the husband commenced divorce proceedings.
After considering the evidence presented at the final hearing, the trial court awarded the wife primary residential custody of the children, granted her $2000 per month as child support, and awarded her $2000 per month for two years as rehabilitative alimony. The trial court divided the marital assets by awarding assets valued at approximately $565,000 to the husband and property valued at only $147,000 to the wife.[1] The wife also received $35,000 in cash and the husband's $78,500 one-half equity interest in the marital home, as lump sum alimony. In this appeal from the final judgment of dissolution of marriage, the wife disputes the trial court's distribution of marital assets, as well as the awards of rehabilitative alimony and child support. She also challenges the trial court's failure to assess interest at the legal rate on pension money the husband withheld from her. We reverse for several reasons.
First, we address the distribution of assets. Although the concept of equitable distribution does not require a trial court to equalize the financial positions of the parties, the judge "must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla. 1980); see also Pirino v. Pirino, 525 So.2d 1028 (Fla. 5th DCA 1988); Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988); Halberg v. *187 Halberg, 519 So.2d 15 (Fla. 3d DCA 1987). The record indicates that the trial court refused to include the increase in value of the husband's medical practice during the marriage as a marital asset. This was error. Turner v. Turner, 529 So.2d 1138 (Fla. 1st DCA 1988); Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988); see also Neff v. Neff, 386 So.2d 318 (Fla. 2d DCA 1980). The practical result of the trial court's omission and the court's other valuations resulted in the husband receiving approximately 85% of the assets.[2] In our view, the trial court's division of assets is clearly inequitable. We therefore reverse for a new distribution and direct the court to consider the wife's contribution to the increase in value of the husband's medical practice.
Second, we review the rehabilitative alimony award and conclude that it is patently inadequate. "Rehabilitative alimony is used to establish the capacity for selfsupport in the receiving spouse, either through the redevelopment of previous skills, or provision of the training necessary to develop potential supportive skills." Sever v. Sever, 467 So.2d 492 (Fla. 2d DCA 1985); see also Halberg. The wife undertook a rehabilitative program that required financial support. She estimated her monthly expenses at $8,220 to provide for living expenses as well as a mortgage payment of $3950 and law school tuition of approximately $750. On his financial affidavit, the husband listed his gross income as $16,667 per month; however, he testified at trial that he was earning $25,000 per month. Under these circumstances, no reasonable person could find that the rehabilitative alimony award was adequate.[3]Vandergriff v. Vandergriff, 456 So.2d 464 (Fla. 1984); Rovenger v. Rovenger, 474 So.2d 286 (Fla. 3d DCA 1985).
Third, we hold that the trial court committed error in calculating the alimony and child support awards. The court should not have considered the husband's potential liability to Medicare.[4] The court should not base alimony or child support on uncertain future events. Elliott v. Elliott, 478 So.2d 509 (Fla. 4th DCA 1985); Ramsey v. Ramsey, 431 So.2d 258 (Fla. 2d DCA 1983); Henderson v. Henderson, 226 So.2d 699 (Fla. 4th DCA 1969).
Fourth, we find error in the trial court's failure to award interest at the legal rate provided in section 55.03, Florida Statutes (1985), on pension money awarded to the wife but not transferred to her. Yohem v. Yohem, 324 So.2d 160 (Fla. 4th DCA 1975); see also Butchart v. Butchart, 469 So.2d 965 (Fla. 4th DCA 1985).
Finally, we accept appellee's concession that the trial court erred in permitting the husband to claim the children as dependents for income tax purposes. McKenzie v. Kinsey, 532 So.2d 98 (Fla. 1st DCA 1988).
For these reasons, we reverse and remand for further proceedings consistent with this opinion.
HUBBART, J., concurs.
SCHWARTZ, Chief Judge (specially concurring in part).
I write only to express my separate views on the issue of the awardability to the wife of the value of the husband's medical practice. Because the wife's efforts obviously were responsible for some of the increase in that value which occurred during the course of the marriage, I agree with the majority that the trial judge incorrectly failed to consider any portion of its gross value whatever as available for equitable distribution. I would point out, however, as is apparent from the very nature *188 of the "asset" in question, that the bulk of its tradable, market value relates to the professional ability and service of the husband in his capacity as a physician. In large measure, it therefore represents the capitalization of the income from his personal efforts and to that extent should not be distributed to the wife. See Dewberry v. Dewberry, 455 So.2d 420 (Fla. 2d DCA 1984); Hernandez v. Hernandez, 444 So.2d 35 (Fla. 3d DCA 1983), pet. for review denied, 451 So.2d 848 (Fla. 1984); Hughes v. Hughes, 438 So.2d 146 (Fla. 3d DCA 1983); see also Moebus v. Moebus, 529 So.2d 1163 (Fla. 3d DCA 1988) (good will of medical practice not element of distributable value), review denied, 539 So.2d 475 (Fla. 1989). The rule that an "equitable" distribution need not be an equal split, see Danoff v. Danoff, 501 So.2d 1361, 1363 (Fla. 4th DCA 1987), thus applies with particular force to this particular "asset."
Put in more formal terms, an appropriate division of this item might, in my view, be accomplished in either of two ways after remand: (a) the "value" of the asset which may be more or less equally divided should be limited to the amount it increased during the marriage or to which the wife contributed, see Crapps v. Crapps, 501 So.2d 661 (Fla. 1st DCA 1987), review denied, 511 So.2d 297 (Fla. 1987); § 61.075(3)(a)(2), Fla. Stat. (Supp. 1988); or (b) there should be a distribution of only a relatively small percentage of the present value of the medical practice as a whole to the wife. See Tuller v. Tuller, 469 So.2d 212 (Fla. 5th DCA 1985); Hughes v. Hughes, 438 So.2d at 146. I believe that either approach, both of which reach the right result, is conceptually justified under the flexible requirements of our equitable distribution doctrine, the final aim of which is, after all, simply to reflect the contribution of each spouse to the existence and growth of particular marital assets.
In all other respects, I agree without qualification with Judge BASKIN's opinion.
NOTES
[1] The trial court did not include the husband's medical practice, valued between $600,000 and $800,000, as a marital asset.
[2] We note that had this case been filed after October 1, 1988, it would have fallen within the purview of section 61.075(3)(a)(2), Florida Statutes (Supp. 1988). That section recognizes a spouse's labor in enhancing the value of assets.
[3] The court failed to provide the wife sufficient funds to meet her expenses. As a result, the bank foreclosed on property she received, and she was forced to sell the marital home.
[4] At trial, the husband presented evidence of potential liability to Medicare for incorrect billing. The trial court announced that this potential liability did not affect its distribution of the marital assets; however, the trial court made no such disclaimer pertaining to the alimony and child support awards.