592 So.2d 698 (1991)
John Henry FORD, Appellant,
v.
Carol Lee FORD, Appellee.
Annette GILLEY, Appellant,
v.
Alan GRAHAM, Appellee.
Nos. 89-2864, 89-879.
District Court of Appeal of Florida, Third District.
December 11, 1991.
*699 Richard J. Burton, Ft. Lauderdale, for appellant John Henry Ford.
Carol Lee Ford, in pro. per.
Elizabeth S. Baker, Miami, for appellant Annette Gilley.
Greene & Marks and Cynthia L. Greene and Deborah Marks, Miami, for appellee Alan Graham.
Melvyn B. Frumkes, Miami, for the Family Law Section of The Florida Bar, amicus curiae.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN, and GODERICH, JJ.
COPE, Judge.
The question presented for en banc consideration is whether, in a child support proceeding, the trial court may order the custodial parent to execute a release of the federal income tax dependency exemption, and thereby accomplish a transfer of the exemption from the custodial parent to the noncustodial parent. We hold that the trial court may do so, so long as the obligation to execute the Internal Revenue Service ("IRS") release of exemption is expressly conditioned on the noncustodial parent's being current in child support payments. In so holding we join the position of the clear majority of American jurisdictions and recede from this court's earlier ruling to the *700 contrary in Villaverde v. Villaverde, 547 So.2d 185, 187 (Fla. 3d DCA 1989).[1]

I.
John and Carol Ford were divorced in 1987. The final judgment gave primary custody to Carol. The judgment obligated John to pay child support, but also provided that he would be permitted to claim the minor children as dependents on his income tax returns.
In order to claim the exemptions, John was required to attach IRS Form 8332 to his tax return. This is a form by which the custodial parent, in this case Carol, releases the dependency exemption. The form is designed so that it may be executed, inter alia, annually or permanently.[2] The judgment did not specify whether Carol was required to execute an annual or permanent release.
In 1988 Carol executed a one-year release. In 1989 John requested a permanent release. Carol objected to a permanent release, fearing that she would be left with no recourse if John failed to pay the required child support. John filed a motion to compel, requesting the court to order Carol to execute the requested release. The trial court, relying on McKenzie v. Kinsey, 532 So.2d 98 (Fla. 1st DCA 1988), decided it had no power to order Carol to execute either the annual or permanent release form. The court denied relief to John and this appeal ensued.
Annette Gilley and Alan Graham were divorced in 1989. Annette was awarded custody. As a portion of the final judgment, Alan was required to pay child support for the parties' two children. In the order on motions for rehearing, the trial court ordered Annette to assign the dependency exemptions to Alan. Annette filed a plenary appeal from the final judgment and argued, inter alia, that McKenzie v. Kinsey does not permit the trial court to require a custodial parent to release the exemptions.
Amicus curiae The Family Law Section of The Florida Bar urged this court to adopt the majority American rule and hold that the trial court has the power to require a transfer of the dependency exemption. The Section argues that a transfer of the exemption can, in appropriate cases, produce higher net parental income which can then be translated into an order for higher child support payments. Because of the importance of the issue presented, this court granted en banc consideration.

II.
The current debate on this issue was occasioned by the 1984 amendments to the Internal Revenue Code ("I.R.C."). Under the pre-1984 version of I.R.C. § 152(e)(2)(A), a state court had the authority to allocate the dependency exemption to the noncustodial parent as a portion of the child support decree, so long as certain IRS requirements were satisfied. If the noncustodial parent paid more than $1200 per child per year in child support and the custodial parent did not clearly establish that he or she paid more than the noncustodial parent for the support of the child, the noncustodial parent was treated as having provided more than half of the child's support and was thus entitled to the exemption. As might be expected, this provision embroiled the IRS in many disputes between parents who both claimed the deduction because both claimed to have provided more than half of the child's support in the given year.
In order to remove itself from the center of these time-consuming disputes, the IRS obtained legislation amending section 152. See House Report No. 98-432, Part II, reprinted in 1984 U.S.Code Cong. & Admin.News 697, 1140. The Tax Reform Act *701 of 1984[3] established a "bright line" rule that the custodial parent automatically receives the exemption unless he or she waives the right to claim it.[4] Because the 1984 amendments allocated the exemption to the custodial parent absent a waiver, debate has ensued as to whether 1984 amendments divested the state courts of the power to allocate dependency exemptions in child support proceedings. See Nichols v. Tedder, 547 So.2d 766, 770-80 (Miss. 1989); Young v. Young, 182 Mich. App. 643, 453 N.W.2d 282, 284-286 (Mich. Ct. App. 1990) (Sawyer, J. concurring).
In the period since 1984, this question has arisen in a large number of states. Almost all have concluded that the state courts have the power to transfer the dependency exemption.[5] Most states accomplish this reallocation by requiring the custodial parent to sign the IRS form relinquishing the right to the exemption. See Ritchey v. Ritchey, 556 N.E.2d 1376 (Ind. Ct. App. 1990).
The minority rule is exemplified by the First District's decision in McKenzie v. Kinsey, which holds that the courts cannot reallocate the dependency exemption. 532 So.2d at 99-100.[6] The McKenzie court stated, "It is well established that deductions and exemptions provided in the taxing statutes are not to be extended beyond the clear import of the language used." Id. at 100 n. 3 (citations omitted). The court reasoned that the entitlement to the exemption is given to the custodial parent and, therefore, any reallocation of the exemption depended upon the custodial parent voluntarily signing a written declaration releasing the right to the exemption. It rejected the equitable considerations which were persuasive in other states, stating that "[t]he propriety of a deduction does not turn upon general equitable considerations ... but rather `depends on legislative grace; and *702 only as there is clear provision therefor can any particular deduction be allowed.' ... ." Id. at 100 n. 3 (citing New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348, 1352 (1934)). This court followed McKenzie in Villaverde v. Villaverde, 547 So.2d 185, 187 (Fla. 3d DCA 1989).
Upon consideration, we find the rationale of the majority view to be the more persuasive. The purposes of the 1984 amendments were: (1) to relieve the IRS from the burden of deciding which one of two claiming parents was entitled to the exemption and (2) "to achieve ... certainty in the allocation of the exemption for federal tax administration purposes." Cross v. Cross, 363 S.E.2d at 457 (emphasis in original). This was accomplished by establishing a simple, bright-line test for the IRS to use. For reasons of administrative convenience, the custodial parent is entitled to claim the exemption, unless the noncustodial parent attaches the appropriate form to the tax return, showing that the custodial parent has released the exemption. This allows the IRS to perform its work by simply examining the face of the tax forms. It is a matter of indifference to the IRS which parent receives the exemption, so long as only one parent claims it and the forms are in order. See id.
We are unable to agree with the view expressed in McKenzie that the 1984 legislation was intended to prevent the state courts from ordering the execution of the IRS waiver form in appropriate cases. If there were any intention of that sort, the statute would so provide or the Congressional history would so indicate. If Congress had intended the exemption to be a nontransferable substantive entitlement, it could have so provided, but instead the legislation specifically allows transfer by execution of the required IRS form. In sum, we can find no indication that Congress sought to foreclose state court action in this area. See Cross v. Cross, 363 S.E.2d at 458-59 (citing Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941)). We therefore recede from Villaverde and hold that the trial court has the power to reallocate the dependency exemption in appropriate cases by ordering the custodial parent to execute the release form. See Cross v. Cross, 363 S.E.2d at 457.

III.
We now turn to the reason the Family Law Section has requested this court to align itself with the majority rule. The Section's amicus brief states:
The section, and there is no question that, the Florida Legislature, the United States Congress and, of course, the Florida courts, are all concerned with providing for children as much support as is possible for their parents to manage, especially where the marriage of those parents has been dissolved. One painless way to enable the children to receive more support is to allow the wage earner (or if both parents are wage earners, then the wage earner with the greater income) to take advantage of the tax savings afforded by the dependency exemption provisions of the Internal Revenue Code... .
The tax savings afforded by the exemption in 1990 are clearly demonstrated by specifically examining the actual savings to taxpayers in after tax dollars under current tax law.
Inasmuch as the dependency exemption is worth $2,050, the actual savings in after tax dollars to taxpayers in each of the three brackets [based on 1990 Tax Rate Schedules] are:

 Bracket Savings
 15% $307.50
 28% $574.00
 33% $676.50

Thus, assuming that there are two minor children who will reside with the wife and she has no income but the husband ... [is in the 33% bracket], if the former husband has the dependency exemption, there will be $1,353 more available to him with which to pay child support.[5]
In the same example as above, if the wife ... [is a wage earner in the 15% bracket], the dependency exemption to *703 her will be worth [$615]; to the husband, it will still be worth $1,353. If the husband is required to pay that tax savings to the wife as additional child support, the wife, without the dependency exemption, will benefit by [$738][7] extra to be used for the children.

[5] Which $1,353 can be added by the trial court to husband's child support obligation.

[7] $1,353 extra to the wife, less [$615] ... she gave up by not having the dependency exemption = [$738].
Amicus brief at 1-2 (emphasis added; footnotes 2-4, 6 omitted).[7]
In both examples, the purpose of shifting the exemption is to maximize the tax savings and then apply the savings to a higher child support award. In the second example, where both parents are wage earners, shifting the exemption away from the custodial parent must be compensated by an upward adjustment in child support; if there is no offsetting adjustment, the custodial parent is in a worse position than if the exemption had been left undisturbed.[8]
The rationale of amicus has been articulated in the reported cases as a significant consideration underpinning the majority rule. The court in Nichols v. Tedder said:
In situations ... [where the custodial parent's adjusted gross income is less than the adjusted gross income of the noncustodial parent], a trial court's authority to allocate the exemption to the non-custodial parent reduces the amount of income tax to be paid to the federal government, and produces a tax savings to the non-custodial parent which exceeds the moderate increase in the tax liability of the custodial parent... .
In this situation, the after-tax spendable income of the non-custodial parent is increased. This savings in tax liability could easily be channeled into increased child support or other payments, thereby rendering the custodial parent's after-tax spendable income, including child support or other payments, the same or better than if he/she had claimed the dependency exemption. To deny our courts the power to allocate the exemption gives the custodial parent the power to punish the noncustodial parent by making the tax liability greater for the noncustodial parent; greater in fact than the savings the custodial parent stands to gain from claiming the exemption. The only real winner in such a situation is the federal government, while the real loser is the child.
547 So.2d at 775.[9]
It has also been noted that in some cases the custodial parent has no taxable income and the noncustodial parent provides the entire economic support. If the courts cannot reallocate the dependency exemption, in such cases
`the exemption would be unavailable to the non-custodial parent, on the one hand, and of no benefit to the custodial parent, on the other, assuming the latter, as is frequently the case, has no taxable income. Other instances may be cited wherein the exemption, if not allocated, would be of little or no benefit to the custodial parent.'
Id. at 773 (citation omitted).
As the foregoing makes clear, a principal purpose in allowing the trial court to reallocate the dependency exemption is to maximize available income by reducing taxes, so that more dollars are available to be paid in child support. We follow the majority rule in holding that the dependency exemption may be transferred for that purpose. *704 The use of that authority is addressed to the sound discretion of the trial court.[10]
One important caveat must be added. Where the trial court decides to require the custodial parent to waive the dependency exemption, that requirement must be conditioned upon the noncustodial parent's being current in making child support payments. As one court put it:
We note that the court's order should make the custodial parent's execution of the waiver contingent upon receipt of support payments. Whether support has been paid will be readily ascertainable because the [annual] waiver need not be signed until the non-custodial parent's federal return for the completed tax year is filed.
Fudenberg v. Molstad, 390 N.W.2d 19, 21 (Minn. Ct. App. 1986). In our view the court should, in the usual case, order only an annual release of exemption.[11]

IV.
Turning to the cases now before us, in Ford v. Ford the original final judgment transferred the dependency exemption to John, the noncustodial spouse. That judgment was not appealed and has become final. John has moved for enforcement.
John contended below that he was entitled to have Carol execute a permanent waiver. The judgment was not specific on that point. In accordance with the views expressed above, the judgment should be construed as requiring an annual waiver only.
The final judgment does not expressly state that John must be current in his child support payments in order to receive the waiver, but it is implicit that he must comply with that requirement in order to receive the waiver. Carol does not argue that there is any child support delinquency, but contends that John has failed to comply with another requirement of the judgment. The question of enforcement is addressed to the equitable discretion of the trial court, which may consider any defenses Carol may offer. The order under review is reversed and the cause remanded for further proceedings consistent herewith.

V.
In Gilley v. Graham, it was found that Annette had reported only $340.00 in income for federal income tax purposes. The exemption would have no practical value in her hands, but would have value in the hands of the former husband, whose taxable income was substantially greater. The trial court therefore had the discretion to transfer the exemption from the wife to the husband.[12] As indicated above, the judgment should contain a provision indicating that the annual waiver of the dependency exemption is conditioned on the former husband's being current in his child support payments. We therefore reverse that portion of the order under review and remand for insertion of that requirement.[13]
We have carefully considered the other points raised by the former wife in her appeal from the final judgment of dissolution. We find that no reversible error has been shown and affirm the balance of the judgment.

VI.
We certify that we have passed upon a question of great public importance,[14] and *705 we certify direct conflict with McKenzie v. Kinsey.
Reversed and remanded as to Ford v. Ford; affirmed in part, reversed in part, and remanded as to Gilley v. Graham; question certified; conflict certified.
NOTES
[1] We express appreciation to amicus curiae The Family Law Section of The Florida Bar, which advocated the position we adopt.
[2] Part I of IRS Form 8332 (1990) is a "Release of Claim to Exemption for Current [Tax] Year." Part II is a "Release of Claim to Exemption for Future Years." The instructions indicate that "Part II should be completed if you [the custodial parent] agree to release your claim to the child's exemption for a specified number of future years, or for all future years. If you are releasing claim for all future years, write `all future years' in the space provided... ."
[3] Pub.L. No. 98-369, 98 Stat. 494 (1984).
[4] This general rule is subject to three exceptions. The only exception relevant to this analysis is found in I.R.C. section 152(e)(2), which allows the custodial parent to execute a written declaration waiving the exemption. The noncustodial parent must attach this declaration to his or her tax return for the year.
[5] Gamble v. Gamble, 562 So.2d 1343 (Ala. Civ. App. 1990); Lincoln v. Lincoln, 155 Ariz. 272, 746 P.2d 13 (Ct.App. 1987); Monterey County v. Cornejo, 53 Cal.3d 1271, 283 Cal. Rptr. 405, 812 P.2d 586 (1991); In re Marriage of Beyer, 789 P.2d 468 (Colo.Ct.App. 1989); Serrano v. Serrano, 213 Conn. 1, 566 A.2d 413 (1989); Rohr v. Rohr, 118 Idaho 689, 800 P.2d 85 (1990); In re Marriage of Einhorn, 178 Ill. App.3d 212, 127 Ill.Dec. 411, 533 N.E.2d 29 (1988); Ritchey v. Ritchey, 556 N.E.2d 1376 (Ind. Ct. App. 1990); In re Marriage of Lovetinsky, 418 N.W.2d 88 (Iowa Ct. App. 1987); Hart v. Hart, 774 S.W.2d 455 (Ky. Ct. App. 1989); Boudreau v. Boudreau, 563 So.2d 1244 (La. Ct. App. 1990); Wassif v. Wassif, 77 Md. App. 750, 551 A.2d 935 (Ct.Spec.App.), cert. denied, 315 Md. 692, 556 A.2d 674 (1989); Bailey v. Bailey, 27 Mass. App. Ct. 502, 540 N.E.2d 187 (1989); Fudenberg v. Molstad, 390 N.W.2d 19 (Minn. Ct. App. 1986); Nichols v. Tedder, 547 So.2d 766 (Miss. 1989); In re Marriage of Milesnick, 235 Mont. 88, 765 P.2d 751 (1988); Babka v. Babka, 234 Neb. 674, 452 N.W.2d 286 (1990); Gwodz v. Gwodz, 234 N.J. Super. 56, 560 A.2d 85 (App.Div. 1989); Sheehan v. Sheehan, 152 A.D.2d 942, 543 N.Y.S.2d 827 (App.Div. 1989); Fleck v. Fleck, 427 N.W.2d 355 (N.D. 1988); Hughes v. Hughes, 35 Ohio St.3d 165, 518 N.E.2d 1213, cert. denied 488 U.S. 846, 109 S.Ct. 124, 102 L.Ed.2d 97 (1988); Motes v. Motes, 786 P.2d 232 (Ct.App. 1989), cert. denied 795 P.2d 1138 (Utah 1990); In re Marriage of Peacock, 54 Wash. App. 12, 771 P.2d 767 (1989); Soriano v. Soriano, 400 S.E.2d 546 (W. Va. 1990); Pergolski v. Pergolski, 143 Wis.2d 166, 420 N.W.2d 414 (Ct.App. 1988). Courts in Tennessee have also affirmed that the dependency deductions may be allocated but there appear to be no officially published opinions. See Hooper v. Hooper, 1988 WL 10082 (Tenn. Ct. App. Feb. 9, 1988) (quoted in Nichols v. Tedder, 547 So.2d at 773-74). For further discussion, see Annot., State Court's Authority, in Marital or Child Custody Proceeding, to Allocate Federal Income Tax Dependency Exemption for Child to Noncustodial Parent under § 152(e) of the Internal Revenue Code (26 U.S.C. § 152 (e)), 77 ALR 4th 786 (1990).
[6] Varga v. Varga, 173 Mich. App. 411, 434 N.W.2d 152 (1988); Jensen v. Jensen, 104 Nev. 95, 753 P.2d 342 (1988); In re Marriage of Nishimura, 86 Or. App. 392, 738 P.2d 1018 (1987); Brandriet v. Larsen, 442 N.W.2d 455 (S.D. 1989); Davis v. Fair, 707 S.W.2d 711 (Tex. Ct. App. 1986). It should be noted that while Nevada and South Dakota do not allow trial courts to transfer the dependency exemption unless the custodial parent voluntarily relinquishes it, trial courts are allowed to reduce the amount of child support a custodial parent receives to balance the loss of the exemption to the noncustodial parent. It has been suggested that the same result would obtain in Texas. See Cross v. Cross, 363 S.E.2d 449, 457-58 (W. Va. 1987); Davis v. Fair, 707 S.W.2d at 718.
[7] The tax rates have been modified for taxable years beginning in 1991. The brackets in 1991 will be 15%, 28%, and 31%. See 26 U.S.C. § 1(a)-(d) (1991).
[8] It should be noted that the foregoing examples are offered for purposes of illustration and are not predicated on the child support guidelines. The parties have not addressed the question whether the pass-through of tax savings is automatically adjusted for in cases under the child support guidelines, § 61.30, Fla. Stat. (1989), as amended, ch. 91-246, § 5, Laws of Fla., or whether such a pass-through must be the subject of an additional adjustment under paragraph 61.30(10)(i), Fla. Stat. We express no opinion on that issue.
[9] Nichols sets forth another illustration showing the tax savings occasioned by shifting the dependency exemption where the parties' adjusted gross incomes are $10,000 and $20,000, respectively.
[10] Where the parties themselves have agreed to reallocate the exemption, the court may exercise its equitable powers to enforce such an agreement.
[11] We recognize that there may be times when a permanent release is necessary or appropriate as, for example, where the custodial parent has persistently and unreasonably refused to execute annual releases.
[12] We construe the court's order as requiring an annual, rather than permanent, release of the exemption.
[13] At that time the former wife may raise the question, should she choose to do so, whether any further adjustment in the child support award should be made by reason of the transfer of exemption. The transfer was set forth in the order on motions for rehearing. It is not clear on this record whether the tax effect of transferring the exemption was considered in arriving at the child support amount.
[14] The question is stated in the first sentence of this opinion.