614 So.2d 1127 (1993)
Patricia STEINBERG, Appellant/Cross Appellee,
v.
Richard STEINBERG, Appellee/Cross Appellant.
No. 91-2042.
District Court of Appeal of Florida, Fourth District.
January 13, 1993.
Rehearing and Rehearing Denied April 6, 1993.
*1128 Robert L. Bogen of Alan J. Braverman, P.A., Boynton Beach, for appellant/cross appellee.
Alan E. Weinstein and Frances P. Allegra of Law Offices of Alan E. Weinstein, Miami Beach, for appellee/cross appellant.
Rehearing and Rehearing En Banc Denied April 6, 1993.
HERSEY, Judge.
We affirm that aspect of the final judgment granting a dissolution of the marriage of Patricia Steinberg and Richard Steinberg. We also affirm the continuing mutual restraining order. In all other respects we reverse the judgment finding that the financial provisions for the former wife, appellant herein, are not supported by substantial competent evidence.
The trial court awarded the wife $1,000 per month rehabilitative alimony for six months and $500 per month for thirty months thereafter. The husband's podiatry practice was valued by the court at $30,000, and the court applied the wife's one-half share of that value to offset the parties' joint $30,000 tax liability to the Internal Revenue Service. There were no substantial assets in this marriage other than the husband's practice. The wife neither owned a residence nor an automobile at the time of separation. She worked in her husband's office on and off for approximately ten years without salary, but had not worked for eight years at the time of separation. She suffered severe emotional problems which have been preventing her from gaining employment, in addition to which her meager skills are outdated.
The wife filed an affidavit evidencing monthly expenses in excess of $6,000. There was undisputed testimony that an income of $70,000 per annum could be properly imputed to the husband. An expert testified that the husband's practice should be valued at approximately $100,000. There is competent evidence in the record *1129 that the husband's actual net earnings from his practice far exceeded his income reflected in tax returns. The practice directly paid almost all of the parties' day-to-day living expenses, including rent for the marital domicile and transportation.
The alimony award. It may be that, after a period of psychiatric consultation, the wife may become employable, but certainly not at a wage level sufficient to permit her to independently regain the standard of living she experienced during the marriage. Without a crystal ball we are not prepared to accept the final judgment's premise that one year should be sufficient for that purpose, considering the wife's present situation. Accordingly, we hold that the award is erroneous, both as to character and as to quantity.
"Rehabilitative alimony is used to establish the capacity for self-support in the receiving spouse, either through the redevelopment of previous skills, or provision of training necessary to develop potential supportive skills." Villaverde v. Villaverde, 547 So.2d 185, 187 (Fla. 3d DCA 1989), receded from on other grounds sub nom, Ford v. Ford, 592 So.2d 698 (Fla. 3d DCA 1991); accord Sever v. Sever, 467 So.2d 492, 494 (Fla. 2d DCA 1985). Only if the wife is capable of establishing a standard of living reasonably commensurate with the standard set throughout the marriage, then is an award of rehabilitative alimony proper. Ghen v. Ghen, 575 So.2d 1342, 1344-45 (Fla. 4th DCA 1991); Kanouse v. Kanouse, 549 So.2d 1035, 1036 (Fla. 4th DCA 1989).
In Murray v. Murray, 598 So.2d 310, 312 (Fla. 2d DCA 1992), the Second District, in recognizing the broad discretion a trial court has in determining alimony, also acknowledged that it is the appellate court's responsibility to determine whether the trial court has erred in that determination. The Murray court held that the criteria for establishing the need of one spouse include the parties' earning ability, age, health, education, duration of the marriage, the standard of living enjoyed during the marriage, and the value of the parties' respective estates. Id.
In Bible v. Bible, 597 So.2d 359 (Fla. 3d DCA 1992), the Third District held that the trial court erred in awarding rehabilitative alimony where permanent alimony was necessary for the wife to maintain her support. The Bibles were married for 25 years, and at the time of dissolution, the wife was 44 and employed full time as a secretary/receptionist. Id. at 360. The final judgment awarded the wife the use of the marital home until the minor children reached majority, as well as the expenses associated with the home. Id. When the children reached majority, the home was to be sold and the proceeds split between the parties. The wife also was awarded $1,700 monthly rehabilitative alimony for five years and $680 per child monthly child support. Id.
On appeal, the wife argued that the rehabilitative alimony should have been awarded as periodic permanent alimony, and the Third District agreed. Id. at 361. The court held that rehabilitative alimony is proper only where the evidence suggests that the wife can be rehabilitated to a financial stature that would permit her to become self-supporting commensurate with her married life-style. Id. Accord Lanier v. Lanier, 594 So.2d 809, 811 (Fla. 1st DCA 1992).
The Bible court also held that where the trial court awards rehabilitative alimony where permanent alimony is due, the error is harmful and must be reversed because it places the burden on the wife to come in at the end of the rehabilitative period to prove a significant change in circumstances before modification will be allowed. 597 So.2d at 361. On the other hand, if the wife becomes sufficiently self-supporting after the award of permanent alimony, then the husband may apply for modification of the judgment based on a change of circumstances. Id. While the Bible court found no error in the amount of alimony at $1,700 per month, it did find that the nature of alimony was improper, and reversed for it to be awarded as permanent periodic alimony. Id. at 362. See also Brooks v. Brooks, 602 So.2d 630, 632 (Fla. 2d DCA 1992) (wife is entitled to permanent *1130 alimony where need was clear from record).
In Lanier v. Lanier, the First District held that it was an abuse of discretion not to award permanent periodic alimony and to award only rehabilitative alimony. 594 So.2d at 811. The twenty-five year marriage in that case was dissolved when the wife was forty-three years old and was a full-time student expecting to receive her B.A. in teaching. The final judgment awarded the wife $1,400 monthly rehabilitative alimony for eighteen months and $500 monthly rehabilitative thereafter, for a period of thirty-six months. Id. at 810-11. Both awards would terminate early on the death of either spouse or the remarriage of the wife, whichever occurred first. Id.
The First District held that since no showing was made that the wife would be able to support herself at a standard of living commensurate with that established during the marriage, despite the fact that she will have a job and an income therefrom, there was a need for an award of permanent alimony. Id. at 811. The court held that "although a wife is arguably self-supporting, she need not demonstrate a total dependency to justify an alimony award." Id. Accord Cosgrove v. Cosgrove, 491 So.2d 1219, 1220 (Fla. 1st DCA 1986) (if the post-marital standard is not commensurate with the former standard, wife is entitled to permanent alimony despite the fact she has an income-producing job).
Lastly, in Carr v. Carr, 522 So.2d 880 (Fla. 1st DCA 1988), the First District held that an award of rehabilitative alimony alone presupposes a potential for self-support which has been underdeveloped or lost during the marriage and is only appropriate where there is evidence that the wife can raise herself to a stature that would permit her to become self-supporting. Id. at 884. The Carr court determined that an award of rehabilitative alimony was erroneous.
In Carr, the husband was a general surgeon, and the wife had work experience as a medical secretary. 522 So.2d at 881. At the time of dissolution, the wife did not have any substantial assets of her own, and the trial court awarded $500 monthly for child support, permanent periodic alimony of $1,500 monthly in addition to health and hospital insurance benefits, and $1,000 monthly for twenty-four months in rehabilitative alimony. Id. at 881-82. The marital assets also were divided, and under the final judgment, the wife was left without a home. Id.
The First District initially noted that the wife did not have a history of earning income "even approaching that necessary to maintain herself" comparable to that in the marriage, and it also held that the evidence did not support a finding that she was capable of being rehabilitated. Id. at 884. The court also noted that it is "somewhat ironic" that the final judgment allowed the husband to continue to have a comfortable and financially secure life at the age of sixty-two, where the wife at age fifty-seven would be relegated to the prospect of entering the working world in search of a career upon which she would have to depend to support herself. Id. The First District concluded that the alimony awards were inadequate both as to amount and nature. It remanded for the rehabilitative alimony award to be converted to permanent periodic alimony and for the court to determine a more equitable amount. Id. at 884-85.
As illustrated by the foregoing cases, an award of rehabilitative alimony was not an appropriate response to the wife's needs in the present case. There should, instead, have been an award of permanent periodic alimony. There is no evidence that the wife will be able to support herself commensurate with her previous standard of living. The husband's expert testified that a medical office specialist should earn between $300 and $450 weekly. The Florida Supreme Court in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), set forth guidelines to be used by the trial court in deciding whether to award permanent alimony:
Permanent periodic alimony is used to provide the needs and the necessities of *1131 life to a former spouse as they have been established by the marriage of the parties. The two primary elements to be considered when determining permanent periodic alimony are the needs of one spouse for the funds and the ability of the other spouse to provide the necessary funds.
382 So.2d at 1201-02 (emphasis added). As previously noted, the husband's true personal income was greater than his reported income. He received personal benefits from his practice paying for, among other things, the family's home rent, utilities, and cars. The husband himself testified that his practice paid for the rent on the family's home which alone was over $11,000 a year. Thus we find as noted earlier that an income of $70,000 can be properly imputed to the husband. See Maddux v. Maddux, 495 So.2d 863, 864 (Fla. 4th DCA 1986) (court may enter an alimony award based on the imputed income of the husband, even if the award totally exhausts or equals that of the husband's actual income); cf. Platt v. Platt, 103 So.2d 253, 255 (Fla.App. 1958) (actual income alone is not necessarily the sole test in determining the ability to pay). Accordingly, the husband has the ability to pay significantly more than the amounts awarded to the wife below. Canakaris.
Additionally, there are no assets of this marriage except the husband's podiatry practice. There was no marital home. There is a need on the wife's part for permanent alimony in this case, in addition to an ability to pay on the husband's. Canakaris; Kanouse, 549 So.2d at 1036 ("[t]he former husband's desire for the support obligation to be temporary must be balanced against the former wife's lost opportunities and the ability to become self-supporting.").
The wife's monthly expenses are ten times the monthly amount awarded, according to her financial affidavit. Where the husband was awarded the only major asset of the parties, his practice, and has an imputed income of $70,000, and the wife, with no assets, if she becomes employed at all, will have a gross income of approximately $16,800, the alimony award is totally inadequate. See Hanks v. Hanks, 553 So.2d 340, 343 (Fla. 4th DCA 1989) (where husband has ability to pay and wife's expenses in financial affidavit were three times that of the alimony award, amount of award was inadequate).
The wife has indicated that she wishes to work; however, she presently is suffering from psychiatric problems which her psychiatrist estimates will take at least twelve months to progress to a point where she becomes employable, in addition to the fact that she has not worked in almost eight years and she is forty-seven years old. The wife worked at her husband's podiatry office for approximately ten years without a salary. The only evidence in the record of what she is capable of earning as a medical office specialist is that of the husband's expert testifying to what his own medical assistants earn and what the wife conceivably should earn. The wife did perform numerous medical office duties in her husband's business, including being the medical receptionist and taking and filing the medical insurance claims. While there may be jobs currently available for medical receptionists, medical insurance claims office help, and medical specialists, the wife's age, physical and mental condition, and outdated work skills also must be taken into account. Kanouse; O'Neal v. O'Neal, 410 So.2d 1369, 1372 (Fla. 5th DCA 1982). Even if the wife may be able to be employed again in the field of medical office specialist, there is no evidence in this record that she could attain the standard of living she enjoyed during her marriage, nor that she will become self-supporting. Bible; Lanier; Carr.
Based on the foregoing authorities, we hold that the wife herein was entitled to an award of permanent periodic alimony.
Going, then, to the amount of the award, we previously noted that the trial court awarded the wife $1,000 monthly for six months, and $500 monthly for thirty months thereafter. In the wife's financial affidavit, she reports that her mortgage/rent payment is $950 monthly; her utility payment is $204 monthly; and her *1132 food is $600 monthly. These three necessities alone total $1,754 monthly. She also lists monthly payments to her various creditors as $1,426. The wife's financial affidavit indicates that her total monthly expenses exceed $6,000.
On these facts we find that no reasonable person could find that the alimony award in the instant case is adequate. See, e.g., Vandergriff v. Vandergriff, 456 So.2d 464, 466 (Fla. 1984) (monthly award of $300 to wife where husband made $3300 monthly was inadequate amount); Canakaris; Villaverde, 547 So.2d at 187 n. 3 (if wife cannot meet her reasonable living expenses during her rehabilitative period, then no reasonable person could find that the rehabilitative award was adequate); Rovenger v. Rovenger, 474 So.2d 286, 287 (Fla. 3d DCA 1985) (same).
The value of the podiatry practice. This issue is raised by the husband's cross appeal. He asserts the trial court erred in placing a value of $30,000 on the practice. The wife counters that the practice was considerably undervalued.
It is a common misconception that the best defensive strategy is always to mount a counteroffensive: to attack! That strategy fails again here. We agree with the wife.
While the husband reported an income between $25,000 and $35,000 in the years preceding the separation, it is undisputed that he was receiving sundry, other personal benefits from his practice's corporation. The wife's expert, Levenson, totaled these other benefits as between $45,000 and $55,000 per year. This was based on the practice's corporate income tax form, I.R.S. form 1120, as well as on the husband's personal records. The expert based his figures on the automobile expenses, the family's medical expenses, the family's travel and entertainment, and such legal fees as did not appear to be business related. The expert also included a number of the husband's checks that were made out to himself and which he subsequently cashed.
The expert further based these calculations on the husband's own records; for example, the expert testified, "The doctor actually kept pretty good records, and he identified all the things that I have here as home [expenses]." The expert determined that the husband's income, which would include the other personal benefits he received from his corporation, would be $55,825 for 1984; $75,708 for 1985; $78,755 for 1986; $69,699 for 1987; $70,249 for 1988; and $50,574 for 1989. He apparently did not have an opportunity to examine 1990-1991 due to the husband's failure to comply with discovery demands.
The expert concluded that although the Steinbergs reported a taxable income of approximately $25,000, they were receiving personal benefits paid by the corporation of at least $50,000. The expert summarized his method of imputing this other income, explaining:
I looked at the original documents, and I looked at the documents prepared on his behalf, the 1120 and the 1040, and all these, especially '84, '85, and '86, were coded by the doctor, so they're in his own handwriting and classified as personal. All I did was analyze them and add it back to get a picture of his own compensation rather than focusing it on the compensation shown on the return.
See Scotchel v. Scotchel, 524 So.2d 1045, 1046 (Fla. 4th DCA 1988) (income may be imputed to a spouse even though it is difficult to identify its source specifically); Seitz v. Seitz, 471 So.2d 612, 614 (Fla. 3d DCA 1985) (same).
Additionally, the expert determined the value of the husband's podiatry practice at $100,000 from an analysis of the 1984 through 1989 tax returns and bookkeeping records for the corporation. He admitted, however, that he could not value the practice presently because he did not have the necessary current information. Also, the expert did not add any value for goodwill due to the doctor's historical inability to maintain a steady practice. See Thompson v. Thompson, 576 So.2d 267 (Fla. 1991) (goodwill should be a factor in valuing law or medical practice as a marital asset if goodwill was accumulated during marriage).
*1133 Excluding goodwill and using the only figure given by an expert at the hearing, the practice should have been valued at $100,000; yet the trial court valued it at $30,000. No competent, substantial evidence supports the trial court's determination. E.g., Harrison v. Harrison, 573 So.2d 1018, 1020 (Fla. 1st DCA 1991) (remanding for the trial court to reassess dental practice where no competent evidence supported court's valuation of $45,000 when only evidence submitted valued practice between $100,000 and $120,000).
Wife's contribution to husband's practice.
Lastly, the trial court, in awarding alimony, may take into consideration the wife's contribution towards the husband's practice. See Hanks v. Hanks, 553 So.2d 340, 342 (Fla. 4th DCA 1989) (the wife should be credited for both her work in the practice as well as her contributions as a wife throughout the marriage); Buttner v. Buttner, 484 So.2d 1265 (Fla. 4th DCA) (same), rev. denied, 494 So.2d 1149 (Fla. 1986); see also § 61.075(5)(a)(2), Fla. Stat. (1991) (recognizing a spouse's contribution of labor in enhancing the value of assets). "Typically, a nonprofessional spouse's efforts increase the professional spouse's earning capacity. Equity justifies higher alimony in such circumstances." Thompson, 576 So.2d at 268. The wife should be credited for her work in the practice. Cf. Hanks, 553 So.2d at 342 (where both parties spend their time to enhance the value of the husband's previously-owned store, it is a proper marital asset); Kanouse, 549 So.2d at 1036 (the trial court erred in not adequately compensating the wife for her lost career opportunities and her transfer of earning power over to her husband).
Except as noted initially, we reverse the final judgment and remand with instructions to increase the amount of the award to the wife, to classify that award as one of permanent periodic alimony, to redetermine the value of the podiatry practice and to accomplish an equitable distribution of this and any other assets.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH DIRECTIONS.
DOWNEY, J., concurs.
GUNTHER, J., concurs in part and dissents in part with opinion.
GUNTHER, Judge, concurring in part and dissenting in part.
I agree with the majority opinion in all respects except that portion entitled wife's contribution to husband's practice. Under the facts of this case, the husband's present practice had not been enhanced by the wife's pre-1984 contribution. The wife worked in her husband's office on and off for approximately ten years without salary, but had not worked for eight years at the time of separation. During the time the wife worked in her husband's practices, the husband closed a Florida practice in 1976 because it was not successful; he opened a practice in Ohio in 1977 and closed it in 1980 due to economic problems; thereafter, the husband opened another Florida practice; the parties filed for bankruptcy in 1985; in 1988 the husband closed his Florida practice because of his cocaine problem; and his present office has been open only since April, 1990. From these facts I conclude that the wife cannot be said to have contributed to the husband's present practice. Furthermore, in her brief, the wife does not argue that she is entitled to any consideration for her earlier contribution by way of increased alimony, a lump sum award, or a special equity.